COUNTY OF LOGAN, APPELLEE, v. WILLIAM H. CARNAHAN
ET AL., APPELLANTS.*

FILED DECEMBER 17, 1902.   No. 12,231.

1. **Land Tax: COLLECTION: JUDICIAL SALE: ANTECEDENT SALE: CONSTITUTION: REVENUE LAW.** The collection of a land tax by judicial sale, without an antecedent sale by the county treasurer, is not forbidden by the constitution, but is contrary to the provisions of the revenue law.

2. **Redemption: TAXES: NON-PAYMENT: ADMINISTRATIVE AND JUDICIAL SALES.** Section 3, article 9, of the constitution, which provides that the right of redemption from all sales of real estate for the non-payment of taxes or special assessments shall exist in favor of the owner for not less than two years, refers both to administrative and judicial sales.

3, ——: ——: ——: ——: **POWER OF LEGISLATURE.** It is within the power of the legislature to authorize a judicial sale of land for the non-payment of taxes without a prior administrative sale, but in such case the purchaser would take the land subject to the owner's constitutional right of redemption.

4. **Revenue Law: TAX LIEN: FORECLOSURE.** Section 1, article 5, of the revenue law, considered apart, does not give an action for the foreclosure of a tax lien based exclusively upon an assessment and levy, but in connection with the succeeding section it gives, or did give, an action for the foreclosure of a tax deed or tax-sale certificate.

5. **Foreclosure of Tax Lien.** As the law now stands, no action for the foreclosure of a tax lien can be maintained, unless based upon a tax deed or tax-sale certificate.

* Rehearing allowed. See opinion, p. 693, *post.*

6. Collection of Taxes. The remedies provided by the legislature for the collection of taxes unon real estate, being adequate and efficient, are exclusive.

APPEAL from the district court for Logan county. Action to foreclose a tax lien by the county as party plaintiff. The question involved in this case, can a county enforce its own tax lien without complying with prerequisites in case of a private purchase, that is to say, without having first obtained a sale certificate? was raised by a general demurrer to plaintiff's petition. Heard below before GRIMES, J. Demurrer overruled. Defendants elected to stand on their demurrer. Decree for plaintiff. Defendants appeal. *Reversed.*

*Hoagland & Hoagland,* for appellants:

It will be conceded that a county is a creature of the legislative arm of the state. It is not a creature of the constitution, but is formed by legislative enactment without special authority from the constitution. County officers are also creatures of the state legislature, not of the constitution, nor of the county. The duties, privileges and prerogatives of each county and each county officer are promulgated by the legislature, and must be found in living statutes. Taxes and rules for the collection thereof are also creatures of the legislative arm of the state. Without authority from the legislature to levy a tax, there can be no levy and without the authority from the legislature, either expressed or implied, to sell property for the collection of a tax, there can be no sale of such property.

Without the authority from the legislature, either expressed or implied, for any officer of the state to maintain an action at law or equity for the collection of a tax, no such action can be maintained in any court.

Counties and their boards can only exercise such powers as are expressly granted by statute, and such grant of power must be strictly construed. *Morton v. Carlin,* 51

Nebr., 202; *State v. Lincoln County,* 18 Nebr., 283; *Lancaster County v. Green,* 54 Nebr., 98, 103; *People v. Buffalo County,* 4 Nebr., 150, and many other cases cited by the court in such opinions.

Now, the matter and method of taxation and collection of revenue being fixed by the constitution in the legislative department of the state, it follows that the judicial department of government can not, without violating the constitution, either create revenue or make provisions for its collection; it can do nothing regarding revenue, save and except to assist the executive department in the enforcement of such rules and regulations concerning the matter as may be furnished by the legislative department.

A county is a mere local subdivision of the state, the creature of the legislature, whose powers are circumscribed by its creator and must be strictly construed. *Woods v. Colfax County,* 10 Nebr., 552; *State v. Lincoln County,* 18 Nebr., 283; *Hamlin v. Meadville,* 6 Nebr., 227; *Lancaster County v. Green,* 54 Nebr., 98, 101, and a large number of cases therein cited. The right of a county to foreclose a tax lien is derived alone from the statute, and the statutory remedy is exclusive. *Nebraska City v. Nebraska City Hydraulic Gas Light & Coke Co.,* 9 Nebr., 339; *Lancaster County v. Trimble,* 34 Nebr., 752, 755; *Richards v. Clay County,* 40 Nebr., 45; *Chamberlain v. Woolsey,* 66 Nebr., 141.

*Beeler & Muldoon* and *Wilcox & Halligan, contra.*

The appellants contend that the petition does not state facts sufficient to constitute a cause of action, and that, therefore, the court had no jurisdiction and the proceedings are absolutely void.

As the records of the various district courts of this state show a very large number of sales heretofore made under just such proceedings as were had in this case, it has become a matter of great importance whether the above contention of appellants is well founded. Thou-

sands of land titles in this state are dependent upon the proper decision of such contention, as well as thousands of dollars of costs.

The sufficiency of the petition is not a test of jurisdiction, as the court may commit an error in holding it sufficient, but this, if the court had jurisdiction, will not render the judgment subject to collateral attack. *Taylor v. Coots,* 32 Nebr., 30.

The authority to grant a license to sell real estate carries with it the implied power to determine the necessity for such sale, and the sufficiency of the pleading presented to the court for that purpose. *Trumble v. Williams,* 18 Nebr., 144.

If the judgment rendered in this cause can not be attacked collaterally, it is not void; and though the court might hold that the petition did not state a cause of action, and might reverse the judgment for that reason, it could not hold the same void, so that it could be collaterally attacked. And if this court, upon this rehearing, should sustain the opinion heretofore rendered wherein it was held that the petition did not state a cause of action, there will no doubt be many collateral attacks upon the decrees in the many cases already disposed of in this state, and it will be of the greatest importance to the public generally that this court should speak upon the question whether these decrees are void, or only voidable upon direct proceeding by appeal or error.

If these proceedings are absolutely void, as appellants contend, then it follows that if no demurrer had been interposed, no answer filed, no objections to confirmation made, and deed issued by the sheriff to the purchaser, the owner of the land could have these proceedings set aside at any time within the statute of limitations. Certainly this is not the case. It is not contended, and can not be successfully contended, that the county has not the right to bring a foreclosure suit for taxes, or that the district court has no jurisdiction to entertain a suit for the same. The demurrer reaches only the question as to

whether the plaintiff county has set up sufficient facts to entitle it to the decree rendered.

The right to bring a suit is entirely distinguishable from the right to prosecute the particular bill. One goes to the maintenance of any action; the other to the maintenance of the particular action. *Illinois C. R. Co. v. Adams,* 180 U. S., 28, 35.

*James V. Hawkins* and *Nathaniel P. McDonald,* also for appellee.

*Jesse L. Root,* for Cass county, having a like interest with appellee in the decision of this case:

Formerly the statute did not authorize the county or its officers to purchase land at delinquent tax sale. Without specific statutory authority, such purchases could not be lawfully made. *Knox v. Peterson,* 21 Wis., 247; *Bruck v. Broesigks,* 18 Ia., 393; *Sprague v. Coenen,* 30 Wis., 209.

Recognizing the limitations of law, and undoubtedly to meet the conditions existing, the twelfth session of the territorial legislature, January 30, 1867, passed "An act to authorize the county commissioners of the several counties of Nebraska to purchase land for their respective counties at tax sales."

Argued orally by *J. S. Hoagland* and *W. V. Hoagland,* for appellants; by *Michael F. Harrington, Arthur F. Mullen, V. O. Johnson, Root* and *Beeler, contra.*

SULLIVAN, C. J.

This action was brought by the county of Logan against William H. Carnahan and others for the purpose of collecting a land tax by foreclosure and sale. The defendants demurred to the petition on the ground that it failed to show that the land had been sold for non-payment

NOTE.—The heavy part of the argument in this case was presented to the court on rehearing, but it was thought best not to "sandwich" any portion of the argument between the opinions.—W. F. B.

50

of taxes. Entertaining the view that the county was entitled to foreclose its statutory lien without acquiring a tax-sale certificate, the trial court overruled the demurrer and gave judgment on the merits. The case comes to this court by appeal, and the question presented for determination is this: Can a county maintain an action to foreclose a tax lien upon real estate without having first acquired in the usual way a tax-sale certificate covering such real estate? There is, we believe, nothing in the constitution which forbids the enforcement of a tax lien by judicial sale without an antecedent administrative sale. Section 3 of article 9 declares that the right of redemption from all sales of real estate for the non-payment of taxes or special assessments shall exist in favor of the owner for not less than two years.

The sales here referred to include, in our judgment, both administrative and judicial sales. The right secured to the landowner is the right to redeem from any sale which, if valid, would divest his title. While it is within the power of the legislature to authorize the collection of a land tax by judicial sale, made at any time after the tax becomes delinquent, the intention to do so, in view of the provisions of article 4, and section 179 of article 1, of the revenue law, ought not to be lightly presumed. If it were intended by section 1 of the act of 1875 (Compiled Statutes, 1901, ch. 77, art. 5) to give an action for the enforcement of a tax lien upon real estate where there had been no previous sale by the county treasurer, it would be hardly possible to reconcile the section with the legislative policy deducible from the later enactments. But as we view it, this section, considered apart, does not give an action. It merely affirms the existence of a right, and provides for its enforcement in the manner and under the circumstances mentioned in the next section. The two sections are here set out:

"Section 1. That any person, persons, or corporation having by virtue of any provisions of the tax or revenue laws of this state a lien upon any real property for taxes

assessed thereon may enforce such lien by an action in the nature of a foreclosure of a mortgage for the sale of so much real estate as may be necessary for that purpose, and costs of suit.

"Sec. 2. That any person, persons, or corporation holding or possessing any certificate of purchase of any real estate, at public or private tax sale, or any tax deed, shall be deemed entitled to foreclose such lien under the provisions of this act, within any time not exceeding five years from the date of tax sale (not deed) upon which such lien is based; *And provided,* That the taking out of a tax deed shall in no wise interfere with the rights granted in this chapter."

If it had been the intention of the legislature to give an action to foreclose a tax lien where there had been no sale by the county treasurer, it is highly improbable that the words "person, persons, or corporation" would have been used to designate the state, county or other subordinate corporate body for whose benefit alone taxes may be lawfully levied. A natural person or private corporation can acquire a tax lien only by purchase, so if section 1 should be regarded as giving, *proprio vigore,* a right of action, we would have to indulge the scarcely warrantable presumption that the legislature used the words "person, persons or corporation" to designate a public or municipal corporation. Again, why should there be legislation authorizing the purchase of real estate by a county if it may just as well foreclose without a purchase? And why should the legislature limit the time for enforcing a lien evidenced by a tax-sale certificate and fix no limitation where the lien is not so evidenced? Besides, the county, unless it had become the holder of a tax-sale certificate, would have no trust title to the taxes due to the state and its corporate subdivisions. It could, therefore, in any view of the case, sue only for the taxes due to itself. The field covered by sections 1 and 2 seems to be pretty well occupied by more recent legislation, but if these sections in their entirety be regarded as still in force, we can not

avoid the conclusion that they give a right of action only to the holder of a tax deed or a tax-sale certificate. This conclusion, we know, is not in harmony with some views expressed in the earlier cases, but it is not, we think, in conflict with any direct adjudication of this court. In *Lancaster County v. Trimble,* 34 Nebr., 752, the land had been sold, and the county was the owner of a tax-sale certificate which was the basis of the action. *Grant v. Bartholomew,* 57 Nebr., 673, was also a suit to foreclose a tax-sale certificate. The sale was held to be void, but the plaintiff was given judgment on the theory that he had become subrogated to the rights of the public. The essence of the decision is that a tax sale, whether void or valid, transfers to the purchaser the lien of the tax for the non-payment of which the land was sold. This doctrine is sustained by all the cases from *Merriam v. Hemple,* 17 Nebr., 345, to *John v. Connell,* 61 Nebr., 267, and is now settled as firmly as it is possible by repeated adjudications to settle anything.

The revenue law has prescribed the procedure for the collection of taxes. The remedy for the enforcement of taxes upon real estate by foreclosure of the tax deed or tax-sale certificate is adequate and efficient, and must therefore be regarded as exclusive. *Crapo v. Stetson,* 8 Met. [Mass.], 393; *People v. Biggins,* 96 Ill., 481; *Brule County v. King,* 11 S. Dak., 294; *City of Detroit v. Jepp,* 18 N. W. Rep. [Mich.], 217; *Corbin v. Young,* 24 Kan., 198; *McLean County Precinct v. Deposit Bank,* 81 Ky., 254; *Cedar R. & M. R. R. Co. v. Carroll County,* 41 Ia., 153; *Marye v. Diggs,* 51 L. R. A. [Va.], 902; Black, Tax Titles, secs. 54, 151; Cooley, Taxation [2d ed.], 448; 1 Desty, Taxation, 467; 21 Ency. Pl. & Pr., 380. The cases cited in *Grant v. Bartholomew* as sustaining the doctrine that the right of the county to maintain an action for the foreclosure of a tax lien exists independently of statute were cases in which the legislature had failed to point out the remedy, or else had provided an obviously inadequate remedy. They are not entitled to be here considered as authority.

Logan County v. Carnahan.

The judgment in favor of the plaintiff, is based upon a petition defective in substance and is therefore

REVERSED.

The following opinion on rehearing was filed June 3, 1903. *Judgment of reversal adhered to:*

1. **Stare Decisis:** RULE OF PROPERTY. The doctrine of *stare decisis*, in respect of a prior decision of a court of last resort, which has become a rule of property, *held* not applicable to the decision in the case at bar.

2. **Sufficiency of Petition:** TEST OF JURISDICTION. Where the court has jurisdiction over the parties and the subject-matter of the action, a judgment rendered by it is not absolutely void and subject to collateral attack even though error is committed in holding the petition on which the judgment is based sufficient, as stating a good cause of action. The sufficiency of a petition is not the test of jurisdiction.

3. **Collection of Real Estate Taxes:** POLICY OF LEGISLATURE. It has been the uniform policy of the legislature, as revealed by its present and prior enactments of statutes concerning the collection of real estate taxes to provide for an administrative sale of the property for delinquent taxes and allow thereafter two years' time in which to redeem in conformity with constitutional provisions, after which an absolute sale and extinguishment of the owner's title is provided for by the issuance of a tax deed by the county treasurers, or by a foreclosure suit, and a sale of the land by judicial process for the satisfaction of such taxes.

4. **Statutory Construction in General.** In the interpretation of statutes a construction will not be given which renders some portions meaningless or which would result in an absurdity, unless the language used is so plain and unequivocal as to permit of no other construction.

5. ————: THE COLLECTION OF PUBLIC REVENUES. The statutes concerning the collection of public revenues arising from taxes levied on real estate contemplate the sale of all real property on which taxes are delinquent by the county treasurers to individuals and corporations who are willing to pay the amount due, and by this means speedily collect such revenues for the expenses of government; and where it is found that real property can not be sold to such purchasers, the same may be sold to the counties and the municipalities mentioned in the act, and tax-sale certificates issued, which, after the expiration of two years—the time allowed to redeem—if not assigned to those willing to purchase, may be foreclosed by the holders; the county or municipality acting as a trustee of an express trust.

6. **Constitution: Statute.** Article 3, chapter 77, of the Compiled Statutes, 1901, is not repugnant to section 11, article 3, of the constitution, in that the act authorizes counties and municipalities to purchase real estate at administrative sale made by a county treasurer, without being required to pay such delinquent taxes until they have realized thereon by a sale and assignment of such certificates or by a sale of the property by judicial process in foreclosure proceedings instituted for that purpose.

7. **Unconstitutional Act.** Even though some parts of an act are unconstitutional, as not being embraced within the scope of the title, or for other reasons, it does not follow, for such reasons, that in every case the whole enactment must fall.

8. ———: **Inducement.** Where a provision of an act is declared invalid because contravening some provision of the constitution, the statute will yield only to the extent of its repugnancy to the constitution; and if the remainder is found complete and capable of enforcement, notwithstanding the invalid portion, it will be held valid unless the unconstitutional part was manifestly an inducement to the legislature for the passage of the remainder.

9. **Statutes in Pari Materia.** All statutes in *pari materia* must be taken together and construed as if they were one enactment, and, if possible, effect given to every provision. *Chicago, R. I. & P. R. Co. v. Zernecke*, 59 Neb., 689.

10. **County Treasurer Trustee and Agent of State.** Ordinarily the treasurer of a county is the trustee and agent of the state and its political subdivisions for the collection of taxes.

11. **Former Judgment Affirmed.** The opinion and judgment heretofore rendered *(Logan County v. Carnahan, ante,* page 685) adhered to.

HOLCOMB, J.

A rehearing having been granted, this cause is again submitted for further consideration. For former opinion, see *Logan County v. Carnahan, ante,* page 685. It is there held that a county can not maintain an action for the foreclosure of a tax lien unless based upon an antecedent tax-sale certificate or tax deed; and the petition in this case failing to show there had been issued a tax-sale certificate for delinquent taxes, was deemed defective in substance, and therefore it was held that the general demurrer

interposed to the petition praying for a foreclosure of the tax lien should have been sustained. The decision, if not in terms, in effect, overruled an announcement apparently sustaining the contrary of the proposition in *Grant v. Bartholomew*, 57 Nebr., 673, wherein it is declared that an ordinary foreclosure suit in a court of equity could be maintained by a county to enforce a lien for delinquent taxes after the time the property becomes liable for sale because of such delinquency, without the prior issuance of a tax-sale certificate. It is urged in the case at bar that we should recede from the proposition held to in the former opinion and follow *Grant v. Bartholomew*, because the decision in the latter-mentioned case has become a rule of property, and for such reason the doctrine of *stare decisis* should be applied and accepted as controlling in the final disposition of the matters herein presented. If, as contended, the decision in the *Grant-Bartholomew Case* has become a rule of property, to overrule which would now affect vested interests and disturb titles to real estate acquired in foreclosure proceedings which have been carried on in conformity with the rule therein announced, we should be slow indeed to overrule the same, and ought not to do so unless satisfied the decision is palpably erroneous and its reversal required in order to vindicate an obvious principle of law, and prevent injustice of a magnitude sufficient to overbalance the evil consequences which inevitably arise from the act of overturning the prior opinion. *Lindsay v. Lindsay*, 47 Ind., 283; *Lombard v. Lombard*, 57 Miss., 171; *Reed v. Ownby*, 44 Mo., 204; *Kearny v. Buttles*, 1 Ohio St., 362. As has been forcibly and aptly said, when parties, relying on a decision or a line of decisions of a court of last resort, have transacted important business affairs, which would be seriously affected by a change of the rule, the court is in duty bound to adhere to such decision, unless palpably and fundamentally erroneous, in all subsequent litigation, however it might be inclined to hold if the question were *res nova*. *Paulson v. City of Portland*, 19 Pac. Rep. [Ore.], 450;

*Gage v. City of Charleston,* 3 S. Car., 491. It may readily be conceded if, as claimed by counsel for appellee, the overruling of *Grant v. Bartholomew* in the one particular mentioned would result in the disturbance of titles to real estate acquired in foreclosure proceedings conducted in conformity with the rule sanctioned by expressions found in the opinion, and would destroy the value of the evidences of ownership of land acquired in such proceedings, we could hardly justify our action by the application of sound legal principles in now overturning the law as therein enunciated, even though convinced that the decision in that case was erroneous. While the force of that opinion as authority is denied on the ground that what is said on the subject we are now considering is *obiter,* consideration of the whole case as presented and determined leads to the conclusion that, although not necessary and essential in reaching a final conclusion in the case, yet the judgment of reversal therein rendered was predicated upon three distinct and different grounds discussed in the opinion, one of which was the right of a county to maintain an action in a court of equity to foreclose a tax lien without an antecedent sale of the property, on which the lien existed, by the county treasurer in the manner provided by statute. Conceding all that is contended for regarding the binding force of a former decision which has become a rule of property, does the question determined in the *Grant-Bartholemew Case* come within the rule? We think not. The decision related to, and was concerning, a rule of practice. This must be so, when we pause for a moment to consider the character of the action and the force and effect of a decree regularly rendered by a court of competent jurisdiction, even though a cause of action was defectively stated in the petition, as is held in the case at bar.

The district court manifestly has jurisdiction over the subject-matter—that is, it is authorized to decree the sale of real estate for the satisfaction of delinquent taxes which are a lien thereon—and it has undoubted jurisdiction over

the parties who come before it or are brought within the jurisdiction of that tribunal. The county boards are by statute empowered in certain cases to bring actions for the foreclosure of liens for taxes assessed against real estate, which have become delinquent, and in this manner to collect the taxes and cause them to be distributed where they properly belong—to those political divisions for whose benefit they were levied. It is true that in the regular exercise of this authority a tax-sale certificate should have been issued and held by the county as a proper basis for the exercise of its right to maintain an action for the enforcement of the collection of delinquent taxes, but this goes only to the regularity of the proceedings by which the authority is exercised and not to the power itself. The court having jurisdiction to hear and determine the right of a county to enforce a tax lien and to decree foreclosure and sale of real estate in satisfaction thereof, and the county having authority under the statute to institute proceedings and maintain an action in its own behalf and as trustee for those other bodies for whom the taxes are levied, a decree rendered which determines the right of a county to maintain such an action, and directs a sale of the property, would not be subject to collateral attack, even though the court committed an error in holding the petition stated a cause of action. If, in such action brought by a county to foreclose a lien for taxes assessed on real estate, the petition is materially defective because of a failure to properly allege facts disclosing that prior to the institution of the suit to foreclose, the land upon which the tax was a lien had been sold by the county treasurer and tax-sale certificate issued therefor, this fact would not render a decree therein absolutely void for lack of jurisdiction and subject to collateral attack. The sufficiency of a petition is not the test of jurisdiction. Even though the court commits error in holding it sufficient if it had jurisdiction, such holding will not subject the judgment rendered to collateral attack. *Trumble v. Williams,* 18 Nebr., 144; *Taylor v. Coots,* 32 Nebr., 30,

Not only is it required that an antecedent tax-sale certificate should·be issued as a basis for the suit to foreclose, but it is equally essential that the sale at which the certificate·was issued occurred two years prior to the institution· of the foreclosure proceeding; and yet it would not, we apprehend, be contended that a suit instituted before the expiration of the two years, whether by a county or by a private individual purchaser of the tax-sale certificate, would render a decree for the sale of the property absolutely void and subject to collateral attack. The right to bring a suit to foreclose a tax lien by a county is, we think, distinguishable from its right to prosecute on a particular cause of action. One goes to the jurisdiction of the court to entertain any action, and the other to the right of the county to maintain the particular one which is under consideration. *Illinois C. R. Co. v. Adams,* 180 U. S., 28, 35. The statutes give to counties authority to institute and maintain actions for the foreclosure of liens on real estate for taxes levied thereon, and the district courts are courts of general common-law and equity jurisdiction and are empowered to try and determine the subject-matter of controversies growing out of such actions, and the parties, being before it, are bound by its adjudications; therefore, we think it must follow that such adjudications as have been made under a procedure where the rule announced in *Grant v. Bartholomew* has been followed, which are unappealed from, have become final and conclusive—binding on all·parties over whom the court obtained jurisdiction. Hence it is that the announcement of a contrary rule can extend no further than to advise present and future litigants of their rights where like questions are involved. We are, therefore, of the opinion that the decision in the *Grant-Bartholomew Case,* in so far as it has a bearing on the case at bar, involves no rule of property and that we are at liberty to depart from it without disregarding the doctrine invoked in its support.

The opinion heretofore handed down in this case has

occasioned widespread interest, because of its bearing on
the question of the right of the different counties of the
state to enforce collection of delinquent taxes on real
estate by foreclosure proceedings when the properties on
which the taxes are levied have not been sold to private
parties by the several county treasurers, either at public
or private sale, as provided by law. We have been favored
in the rehearing with numerous briefs of counsel practic-
ing at the bar of this court who are interested in similar
questions and who appear herein as *amici curiæ.* While in
all the briefs thus presented for consideration counsel are
agreed in the proposition that an antecedent sale by the
treasurer is not required before the county may maintain
a suit to foreclose the tax lien and subject the property to
sale for its satisfaction, and for that reason urge that our
former opinion is erroneous, yet this proposition is sought
to be maintained by different counsel for reasons and by
arguments along diverging lines, which to a degree ren-
ders the views of each not altogether in harmony with the
others. We may, for convenience, group these different
views as follows: First, that a proper interpretation of
the statutes as now existing concerning the enforcement
of liens on real estate on account of delinquent taxes, war-
rants the construction held to in the *Grant-Bartholomew
Case,* to the effect that a foreclosure suit can be maintained
by a county in its own behalf and as trustee for the state
and its political subdivisions, for taxes assessed and delin-
quent, without the formality of an antecedent sale to the
county by the treasurer and the issuance of a tax-sale cer-
tificate therefor; second, that the remedy for the collection
of such delinquent taxes under the statutes as at present
existing is inadequate, and because of such inadequacy,
the law having expressly given a lien, the court will afford
an efficient remedy for its enforcement by entertaining an
equitable action to subject the property to the satisfac-
tion of the lien in conformity with general principles of
equity; third, that certain provisions of the revenue law
are invalid because not embraced within the title of the

act, which, if so held, leaves the county without any remedy by foreclosure proceedings, and when properties on which taxes are levied are not sold to private parties at administrative sale by the county treasurers, the court will then authorize foreclosure of the lien without an antecedent sale, as being the only adequate and effective means that may be resorted to for the collection of such taxes; fourth, that because certain portions of different acts under the revenue law relating to foreclosure suits by the county after tax-sale certificates have been issued have been determined invalid, the court should further hold that the invalid portions were material inducements to the passage of the remainder of the acts, and for that reason the whole would fall and thus the county would be left without any remedy, save by a foreclosure of the lien for taxes created by statute in an ordinary equitable action in its own behalf and as trustee of an express trust. The legislature of the state having at its last session enacted a law materially changing our whole revenue system, which will soon become operative and replace the present statute, a consideration in detail of all the questions presented which go to the proper interpretation and validity of the acts under consideration, renders the present discussion somewhat academic in character; hence we are, we think, excusable, if we should not deal with these various questions as minutely and exhaustively as we would were the present law not to be so soon superseded by another act. A careful consideration of the different enactments of the legislature bearing upon the question in hand, satisfies us that the conclusion reached on the first hearing results in a correct interpretation of the law, and that there exists no authority under the law for a county to institute and maintain a suit for a foreclosure of a tax lien on real estate, except the action be based on an antecedent administrative sale by the county treasurer, the issuance of a tax-sale certificate therefor, and the expiration of two years thereafter, during which time the owner of the land may redeem from such administrative sale by paying the

principal, interest and costs as provided by statute. In construing the law as to the proper procedure by which lands are sold for taxes and the owner's title completely divested, we should not be unmindful of a salient feature contained in the fundamental law to the effect that the owners of land shall have two years to redeem from all sales of real estate for the non-payment of taxes. Constitution, art. 9, sec. 3. These cardinal provisions, we are convinced, have been kept in view by the legislature in all its enactments for the sale of real estate for delinquent taxes, whether by administrative proceedings or by judicial process. While, as is said in the former opinion, the legislature might have adopted a different method regarding the sale of real estate for delinquent taxes, and whether time for redemption should be allowed after a judicial sale, yet its manifest policy, so far as revealed by its present and prior enactments, has been to provide for an administrative sale after real estate taxes have become delinquent, and after the expiration of two years therefrom, the time allowed by the constitution for redemption, to provide for an absolute sale and extinguishment of the owner's title by the issuance of a tax deed by the county treasurer; or, that failing to accomplish the object intended, as it has by the many decisions of this court, to authorize a foreclosure suit and a sale of the land by judicial process for the taxes existing against the same as a lien thereon. It hardly seems permissible, under the several acts passed by the legislature, to say that all persons who are owners of tax-sale certificates by reason of a sale of the land for delinquent taxes by the county treasurer as an administrative proceeding in the collection of taxes, have the undoubted right to foreclose their liens after the expiration of two years from such sale, and not otherwise, and that a county has such right when a tax-sale certificate is issued to it; but if no sale is made and no certificate issued, then it may, as soon as the taxes become delinquent, bring and maintain an action to foreclose and effectuate a sale of the property to satisfy the taxes, with no delay, save

only that required for the foreclosure proceedings. If such were a correct interpretation of the statute, then the provisions authorizing the county to take out a tax-sale certificate and foreclose its lien at the expiration of two years, if the land has not been redeemed, would not only be meaningless, but would result in an absurdity so palpable that it ought not to be imputed to the legislature, unless its action was so plain and unequivocal as to permit of no other construction. What the legislature has done and what it has intended to do, as we construe its language, is to, first authorize the sale of the real estate on which taxes are due and delinquent, by the county treasurer, to individuals and corporations that are willing to purchase, and by this means speedily collect the public revenues for the expenses of government; and, second, where for some reason real estate on which taxes are delinquent is found undesirable as investments by those purchasing at tax sales, and is not sold for want of bidders who are willing to pay the delinquent taxes and be subrogated to the rights of the public, to authorize the issuance of tax-sale certificates by the county treasurers to the counties, and other municipalities mentioned, because of their interest in the speedy collection of such taxes, and to permit them to hold such certificates on their own behalf and as trustees, and to permit the sale and transfer of such certificates to those who may be found willing to purchase, and thus have the revenues turned into the treasury, or, in the event no purchaser of such certificates can be found, and the two years' time allowed to redeem has expired, to permit the maintenance of an action such as might be prosecuted by individual holders of such certificates, and obtain a decree of foreclosure and sale of the real estate in satisfaction of the lien existing thereon. By this plan all real property may be subjected to sale for the non-payment of taxes, and the constitutional provisions as to redemption be observed; and the county or municipality holding the certificate and enforcing the lien evidenced thereby, is held responsible only for the amount

of revenues realized by the sale and the proportionate share thereof due to the state or any of its political subdivisions or any municipality thereof. In all the history of legislation concerning the public revenues and the sale of real estate in satisfaction of tax liens, but one instance of a law authorizing proceedings in the courts and a sale by judicial process before an administrative sale made by the county treasurer, has come to our knowledge, and this law was repealed within a short time after its enactment. The law was evidently intended for a special purpose and to meet conditions abnormal in character existing at the time of its enactment. It was passed and took effect February 27, 1873, and is entitled "An act to provide relief for delinquent taxpayers." General Statutes, 1873, ch. 66, p. 940. The act provided, in substance, that all taxes levied in the territory or state previous to the year 1872 might be released and discharged in full upon payment of the principal, without interest, at any time before December 1, 1873. Provisions were then made for the institution by county treasurers of one suit in each county for the sale of all lands upon which such taxes had not been paid within the time mentioned. The act had served its purpose and was repealed by the succeeding legislature, and at no other time nor by any other act do we find any legislative expression indicative of an intention to authorize the sale of real estate for delinquent taxes by judicial process, save the action is based on a tax-sale certificate issued by the county treasurer two years before suit to foreclose is instituted.

Article 1, chapter 77, Compiled Statutes, an act embracing our general revenue laws, was passed in 1879. By section 179 the owners of tax-sale certificates issued by the county treasurer, instead of demanding a treasurer's deed after the expiration of two years, were permitted to proceed by an action for the foreclosure of the lien evidenced by the certificate and cause the tract of land to be sold for the satisfaction thereof and of all prior and subsequent taxes paid thereon, in all respects, as far as practicable, in

the same manner and with like effect as though the same were a mortgage executed to the holder of such certificate. This section is in itself probably sufficient authority for all holders of tax-sale certificates issued by county treasurers, whether a county, a municipality, a private corporation or a natural person, to institute actions for the enforcement of the lien as contemplated therein, but a determination of this question is foreign to the present inquiry.

At the time of the passage of the general revenue law referred to, there was in force what is now incorporated in the Compiled Statutes of 1901, as article 5, chapter 77, of the revenue laws. This act was entitled "An act to provide a method of foreclosing tax liens upon real estate in certain cases." Sections 1 and 2 were in the former opinion construed together, and held to apply only to liens which were evidenced by prior tax-sale certificates issued by county treasurers at public or private sale. While an ingenious and interesting argument is presented favorable to a construction of these sections in harmony with the views expressed in *Grant v. Bartholomew, supra,* and such as would permit a county to enforce a tax lien by foreclosure proceedings, without an antecedent administrative sale, we are satisfied that the interpretation heretofore given is the only correct one which the language used is fairly susceptible of as expressive of the intention and policy of the legislature concerning the subject. Obviously, what the legislature did say was that either a person or a corporation having a lien upon real property for taxes assessed might enforce it by an action in the nature of a foreclosure of a mortgage, and that the nature of the lien in favor of such person or corporation was that which arose by the possession of a tax-sale certificate issued by the county treasurer in pursuance of the statute, whether at public or private sale, and that the holder should be deemed entitled to foreclose the lien within any time not exceeding five years; and further, that the taking out of a tax deed should in no wise interfere with the rights

granted by the act. It is, we think, entirely clear that the person or corporation mentioned in each of the two sections in whose favor the lien existed was regarded as being in exactly the same situation and holding by the same rights. Any other construction would, in our judgment, do violence to the language used. The act is declared to be cumulative and not exclusive, and in no wise to interfere with, alter or amend existing revenue laws. The legislature of 1879 also passed an act embodied in the Compiled Statutes, 1901, as article 3, chapter 77, "to authorize certain county and municipal officers to purchase real estate at tax sale." In it county commissioners were authorized to purchase for the use and benefit and in the name of their respective counties any real estate which had been advertised and offered for sale and remained unsold for want of bidders. County treasurers were directed to issue certificates of purchase of real estate so sold in the name of the proper county, the certificates to remain in the custody of the treasurer; the commissioners being authorized to assign them to any wishing to buy for the amount expressed on the face of the certificate and interest. Similar provisions were also made for the taking out of such certificates by the municipalities of the state on real estate within the corporate limits of any city or village. It is expressly provided that the real estate thus sold by the county treasurer would not result in any liability on the part of the county treasurer or city or village treasurer till such certificates have been sold by the proper authorities; and that in all cases where the tax lien is foreclosed by the county, the county treasurer shall be required to account for the proportion only of the amount actually received, and that credit should be given him for the full amount of the taxes charged up against the real estate thus sold. By the act approved February 28, 1881 (art. 4, ch. 77, Compiled Statutes, 1901), counties holding tax-sale certificates after the time of redemption has expired were authorized to proceed by action to foreclose such certifi-

cates and cause the land to be sold, and it is provided that at such foreclosure sale the county commissioners may, if deemed best, purchase in the name of their respective counties such real estate.

To sum up, it may be observed that of these several sections and different acts, all of which have a bearing on the rights of those seeking to enforce in the courts a lien for taxes given by statute because of their non-payment by the owner of the property against which assessed, section 179, article 1, chapter 77, provides in general terms that the owner of any certificate of tax sale may, instead of demanding a deed from the treasurer as is provided he may do, proceed by an action to foreclose the lien evidenced by his certificate of the same character and with like effect as an action to foreclose a real estate mortgage. By sections 1 and 2 of article 5—a cumulative act—authority is given to enforce a tax lien held by any person or corporation in an action in the nature of foreclosure of a mortgage at any time after time for redemption has expired within five years, and that such action can be maintained either on a certificate of sale made by a county treasurer or upon any tax deed issued on such certificate, and that the taking out of a tax deed will in no wise interefere with the rights granted by the act. Article 3 of chapter 77 authorizes county commissioners and municipal authorities to purchase at private administrative sale by county treasurers such real estate as has not been sold at either public or private sale to private investors, and makes provision for the assignment of such certificates. It is also provided that county treasurers shall be required to account only when the county or municipal authorities have realized on such certificates of sale, either by a sale and assignment of the certificate, or by a sale of the property by judicial process in foreclosure proceedings, and then only for the proportional amount which shall actually be realized by a sale of the land. By article 4 of chapter 77, counties are authorized not only to proceed by a foreclosure to sell the property

on which taxes are a lien, as evidenced by tax-sale certificates issued to them by the county treasurer, but also to purchase, if deemed best, the real estate sold at judicial sale to satisfy the taxes assessed against the same; and it also provides for a particular method of procedure in bringing and conducting the action to foreclose the tax lien. Although there may be inconsistencies and incongruities in all this mass of legislation, it is not our intention to deal with any question possibly affecting the validity of these several acts, or any portions of them, which has not been presented and argued in briefs of counsel. It will be observed that the central idea in each of the several acts, or in all of them, when considered together, is to provide a method for the sale, at least in form, by the several county treasurers of all the real estate in the several counties on which taxes are assessed, to provide for the issuance of tax-sale certificates, and, when the holder does not rely on a tax deed, for the foreclosure of the lien evidenced thereby after the time for redemption has expired. This is the substance of the former decision and, as it seems to us, is a necessary and the only logical conclusion which can be reached after a thorough consideration of these several acts.

It is contended that article 3 of chapter 77, entitled "An act to authorize certain county and municipal officers to purchase real estate at tax sale," is unconstitutional, because embracing legislation not within the scope indicated by its title, and is, therefore, repugnant to section 11, article 3 of the constitution. It is said the title indicates only that a purchase of real estate at tax sale may be made by a payment of the taxes due, as in other sales made by the treasurer, and that there is nothing to indicate that no money was to be paid, nor the treasurer required to account for anything, until the taxes had been realized by the sale and assignments of the certificates thus obtained or by the foreclosure and sale of the property in satisfaction of the taxes existing as a lien thereon. The title is of a comprehensive character, and without spe-

cial limitations or restrictions. The fact that county commissioners were authorized to purchase for the benefit of the county to which a portion of the taxes are due, and for it as trustee of the other divisions to which the taxes are due and owing, without paying the money either to the county or those for whom it was acting as trustee till realized by a sale of the certificate or a foreclosure of the lien, is, we think, fairly comprehended within the title of the bill as expressed. It does not necessarily follow that because counties are authorized to purchase, the implication arises that the purchase can be made only by a payment in cash of the taxes due at the time the sale is made. The county is authorized to purchase on account of what is due itself and the other divisions for whose benefit the taxes are levied, and to pay to those who are entitled to the taxes when it is enabled to realize by a sale of the certificate or by foreclosure of the lien; and this legislation is, we think, embraced within the scope and purview expressed by the title. *Lancaster County v. Trimble,* 34 Nebr., 752.

Some objections are also offered to the validity of the legislation contained in article 4 of chapter 77, on the ground that the title to the act is too restrictive to cover and include some portions thereof. What is said on another branch, dealing with the alleged invalidity of a portion of these laws, will, we think, also dispose of the present objection. Even though some parts of an act are unconstitutional, as not being embraced within the scope of the title or for other reasons, it does not follow for such reasons that in every such case the whole enactment must fall.

It is also contended that because some provisions of these different acts have been held unconstitutional, or should be so held, it must follow that the entire act will be declared void because the invalid portions formed an inducement to the passage of the remainder. We do not think this result necessarily or properly follows. Some of these provisions, it is true, have been held invalid, notably that portion of section 2, article 3, chapter 77, au-

thorizing a sale and assignment of a tax-sale certificate held by a county for less than the taxes called for thereby (*State v. Graham,* 17 Nebr., 43, 45), and a part of section 1, article 4. *Lancaster County v. Trimble,* 33 Nebr., 121. These invalid portions do not, in our judgment, render void the whole of each of the two acts in which they are found. The remainder of each of the two acts should be upheld, as coming within the rule frequently announced to the effect that a statute will yield only to the extent of its repugnancy to the constitution, and if the remainder be found complete and capable of enforcement notwithstanding the invalid portion, it will be held valid unless the unconstitutional part was manifestly an inducement to the legislature for the passage of the remainder. *State v. Stuht,* 52 Nebr., 209; *Scott v. Flowers,* 61 Nebr., 620. We do not think it can be successfully contended that the portion of section 2, article 3, authorizing the sale and assignment of certificates of tax sales held by the county authorities at not less than fifty per cent. of their face value, which has been held repugnant to the provision of the constitution against the remission of taxes, was such an inducement to the passage of the entire act as to render it void, within the meaning of the rule invoked. What the legislature undertook to do was to provide for a formal sale of all lands for delinquent taxes not sold to other purchasers for the amount of the taxes due, and thereafter permit the sale and assignment of the certificates, if it might be done, and, if not, the foreclosure of the lien evidenced thereby after the expiration of two years. The main object was to provide ultimately for a sale of the land on which the taxes were a lien for their satisfaction. The attempted authorization of the sale of the certificates for less than their face value, was but one of the means adopted to accomplish the desired end. What has been said with reference to the invalid portion of section 2, article 3, applies equally well to the proviso of section 1, article 4, wherein it is declared that no action shall be brought and maintained by the county authorities unless the amount due

shall exceed $200. Some other objections have been urged upon us, which have not been overlooked, but it is deemed unnecessary to discuss them in detail.

These several statutes all have a bearing more or less direct on the question of chief importance which is involved in the present controversy. It is a cardinal rule of construction that all statutes *in pari materia* must be taken together and construed as if they were one enactment, and, if possible, effect given to every provision. *Chicago, R. I. & P. R. Co. v. Zernecke,* 59 Nebr., 689; *Dawson County v. Clark,* 58 Nebr., 756; *Stanton County v. Madison County,* 10 Nebr., 304; *Hendrix v. Rieman,* 6 Nebr., 516. Yielding obedience to this rule, as should be done, and considering the several enactments of which we have made mention in an effort to ascertain the intention of the legislature, we can not escape the conclusion that the remedies provided by the legislature for the enforcement and collection of taxes upon real estate are adequate and efficient and, therefore, exclusive, and that in the administration of the remedies thus provided, by a resort to the courts, a tax-sale certificate issued by the county treasurer, either to an individual as purchaser upon payment of the delinquent taxes charged against the real estate, or to the county or a municipality, as mentioned in the act, to be held in trust, is an essential prerequisite on which to base foreclosure proceedings and obtain a judicial sale of the property covered by the tax lien.

It is insisted that because part of the taxes assessed, which become a lien on real estate, are due to the different counties, which also, it is said, act as trustees of an express trust in the collection of taxes generally, a county for these reasons should be permitted to enforce the lien arising from levies of taxes without an antecedent sale, upon general principles of equity, which may be invoked for the enforcement of a lien existing in one's favor, even though another method for enforcing the lien is provided by statute. To this it may be said that nowhere in the revenue law is such a trust created, except for the enforcement of

the lien after a formal tax sale has been made by a county treasurer, or for certain other purposes after taxes have been collected by the county treasurer.   Ordinarily, the treasurer of a county is the trustee and agent of the state and its subdivisions for the collection of taxes.   This has been frequently determined by the prior decisions of this court.   Compiled Statutes, 1901, ch. 77, secs. 89, 109, 113; *Mortensen v. West Point Mfg. Co.*, 12 Nebr., 197; *Burlington & M. R. R. Co. v. Buffalo County*, 14 Nebr., 51; *Price v. Lancaster County*, 18 Nebr., 199; *Herman v. City of Crete*, 9 Nebr., 350; *Lancaster County v. Trimble*, 34 Nebr., 752; *Richards v. Clay County*, 40 Nebr., 45.   It is true that in a special sense and under certain circumstances, it is made the duty of the different counties to act as a trustee for certain purposes in the collection and preservation of the public revenues due to the state and its subdivisions for whose benefit taxes are levied.   This is notably so where a county undertakes the collection of taxes by the acceptance of a tax-sale certificate issued as provided by statute, and the foreclosure of the lien evidenced thereby in a court of competent jurisdiction after the time for redemption has expired.   It is also true in a case where a county pursues a defaulting county treasurer, as in the case of *Thorne v. Adams County*, 22 Nebr., 825; and where it seeks to collect funds belonging to the county treasury which have been deposited under the depositary law; as in the case of *Commercial State Bank v. Antelope County*, 48 Nebr., 496.   It will be seen, however, that the illustrations given are readily distinguishable from those cases in which is involved the collection of taxes from the property on which they are a lien or from a person against whom taxes are assessed, which ordinarily belongs to the county treasurer, in the execution of the powers and duties of his office.

The judgment heretofore rendered is, for the reasons stated, adhered to.

FORMER JUDGMENT ADHERED TO.