---o---

## LINDSAY ET AL. *v.* LINDSAY ET AL.

DESCENT.—*Statute.*—*Section 26.*—Section 26 of the statute of descents, 1 G. & H. 296, was in force in the year 1870; it should be construed as if it provided that if a husband or wife die, leaving any estate undevised, and leaving no child and no father or mother, the whole of such estate shall descend to the survivor; the word "intestate" refers to property, and not to the decedent.

PRACTICE.—*Stare Decisis.*—When a court of appeals of last resort has by its

Lindsay *et al. v.* Lindsay *et al.*

decisions established a rule of property under which rights have been acquired, an adherence to such decisions by the same court becomes a duty, and they should not be overruled except for the most convincing and overwhelming reasons.

REPEAL OF LAWS.—*Repeal of Repealing Statute.*—The repeal of a repealing act revives the original act.

From the Dearborn Common Pleas.

*J. D. Haynes* and *J. K. Thompson,* for appellants.

*F. Adkinson* and *G. M. Roberts,* for appellees.

OSBORN, J.—This was a complaint for partition filed by the appellants against the appellees. A demurrer was filed to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, which was sustained. The appellants excepted, refused to amend, and final judgment was rendered against them.

The error assigned is in sustaining the demurrer to the complaint.

The facts, as they appear in the complaint, are, that Elijah Lindsay died, in 1870, seized of several tracts of land situate in this State, amounting in the aggregate to between six and seven hundred acres, and several lots in the city of Aurora. He left surviving him Mary Lindsay, his widow, and brothers and sisters, and the descendants of deceased brothers and sisters, as his only heirs at law. On the 26th day of December, 1866, he made and published his will, by which he devised his whole estate to his wife during her natural life, except two parcels of land, one of eighty acres and one of sixty acres.

He bequeathed to Melville R. Cannon, one of his nephews, a life estate in the eighty-acre tract; he to pay to decedent's widow one-half the proceeds thereof during his natural life, with a contingent remainder in fee to his children.

He also bequeathed to his niece by marriage, Caroline A. Vail, wife of Benjamin T. Vail, an estate for the life of his widow, she paying to his widow one-half of the proceeds thereof, with remainder in fee to said Caroline and her children. The remainder of his estate was undevised.

On the 23d of August, 1869, he made a codicil, by which

he changed the description of the land bequeathed to Mrs. Vail, so as to increase it to seventy acres; and he made a few small bequests to some of his nieces and a nephew.

Mary Lindsay, widow of the decedent, elected to take under the law, and not under the will.

The action was brought by the brothers and sisters, and the descendants of deceased brothers and sisters of the said Elijah Lindsay, against Mary Lindsay, his widow, and Caroline A. Vail, to whom the bequest was made, and her husband, for a partition of the undevised real estate, of which Elijah Lindsay died seized.

It is quite likely that the testator supposed that his next of kin would inherit his estate not devised, and that on the death of his widow it would descend to his brothers and sisters then living, and to the descendants of such as were dead. Whatever might have been his opinion on that question, it is clear that he intentionally left a large part of his estate undisposed of by his will; and whether it was the result of his ignorance of the law or from some other cause, we are not at liberty to change it.

If sec. 26, 1 G. & H. 296, was in force at the death of the testator, then, under the ruling of *Armstrong* v. *Berreman,* 13 Ind. 422, the whole of the undevised estate descended to the widow, and the demurrer to the complaint was correctly sustained.

If sec. 4, Acts 1853, p. 56, is in force, then the estate descended, one-third to the widow, and two-thirds to the brothers and sisters living, and to the descendants of such as were dead. Sec. 4, 1 G. & H. 292.

We are entirely satisfied with *Armstrong* v. *Berreman, supra,* and adhere to it. We think that sec. 26, *supra,* should be construed as if it provided that if a husband or wife die, leaving any estate undevised, and leaving no child, and no father or mother, the whole of such estate shall descend to the survivor; that the word "intestate" refers to property, and not to the decedent.

The act of March 9th, 1867, 3 Ind. Stat. 573, repealed

sec. 4 of the act of March 4th, 1853, *supra. Leard* v. *Leard,* 30 Ind. 171. We do not consider it necessary to review the opinion in the case last cited, or to elaborate one on the same point in this, or to cite authorities in support of the position that acts may be repealed without reference to their titles, or the particular act repealed, in the repealing act.

A single act may repeal all laws on any given subject, or all in force, and laws may be repealed by express enactment or by implication. The title of the act of March 9th, 1867, was sufficiently certain to indicate what laws were repealed. It was " for the repeal of statutes, not in conformity with the ruling of the Supreme Court in the case of *Langdon* v. *Applegate,* and others." A reference to that case, 5 Ind. 327, will show that the statutes repealed are amendatory acts, which omitted to set forth the act revised, or section amended.

We adhere to *Leard* v. *Leard, supra.* See *DeMoss* v. *Newton,* 31 Ind. 219; *Pierce* v. *Pierce,* 46 Ind. 86; *Nebeker* v. *Rhoads,* 30 Ind. 330, following *Leard* v. *Leard, supra.*

The judgment of said Dearborn Common Pleas is affirmed, with costs.

DOWNEY, J., was absent.

## ON PETITION FOR A REHEARING.

OSBORN, J.—We are requested to grant a rehearing in this case, that the cases of *Leard* v. *Leard,* 30 Ind. 171, *Nebeker* v. *Rhoads,* 30 Ind. 330, and *DeMoss* v. *Newton,* 31 Ind. 219, may be reconsidered and overruled.

*Langdon* v. *Applegate,* 5 Ind. 327, was decided at the November term, 1854. It was followed and adhered to by many decisions, and, without legislation, rights of property would have been disturbed by overruling it. The rule established by those cases was regarded as fixed and settled, and so continued until the decision in the case of *The Greencastle, etc., Turnpike Co.* v. *The State, ex rel. Malot,* 28 Ind. 382, at the November term, 1867, when the rule was changed,

and *Langdon* v. *Applegate*, and all the cases following it, were overruled. It is quite likely that the legislature had knowledge before that opinion was delivered, that *Langdon* v. *Applegate* would be overruled, and for the purpose of averting the consequences, which would otherwise result from such a ruling, passed the act of March 9th, 1867. The object of the legislature clearly appears on the face of the act. The constitutionality of that act was deliberately sustained in *Leard* v. *Leard*, 30 Ind. 171, which was followed by *Nebeker* v. *Rhoads*, 30 Ind. 330, and *DeMoss* v. *Newton*, 31 Ind. 219. It was cited and recognized as authority in *Pierce* v. *Pierce*, 46 Ind. 86.

If we doubted the correctness of the decisions cited, we should be unwilling to overrule them. They have become a rule of property in this State, and to overrule them would disturb titles to real estate, acquired by purchase on the faith of, and in reliance upon, the rule thus established. We should be unwilling to make a decision involving such consequences, except for very convincing reasons. Blackstone lays it down as an established rule, to abide by former precedents, when the same point comes again into controversy, unless flatly absurd. 1 Bl. Com. 70, 71.

Public confidence in the decisions of courts rests in a great measure in their adherence to decided cases. Chancellor Kent, in his commentaries, 1 Kent 476, says:

"The community have a right to regard it" (a decision of the court) "as a just declaration or exposition of the law, and to regulate their actions and contracts by it. * * *

"If judicial decisions were to be lightly disregarded, we should disturb and unsettle the great landmarks of property. When a rule has been once deliberately adopted and declared, it ought not to be disturbed, unless by a court of appeal or review, and never by the same court, except for very cogent reasons, and upon a clear manifestation of error; and if the practice were otherwise, it would be leaving us in a state of perplexing uncertainty as to the law."

To the same effect are *Bellows* v. *Parsons*, 13 N. H. 256;

*Taylor* v. *French,* 19 Vt. 49; *Boon* v. *Bowers,* 30 Miss. 246; *Emerson* v. *Atwater,* 7 Mich. 12; *Goodell* v. *Jackson,* 20 Johns. 693, 722; *Day* v. *Munson,* 14 Ohio St. 488; *Loeb* v. *Mathis,* 37 Ind. 306, 312; *Harrow* v. *Myers,* 29 Ind. 469; *Carver* v. *Louthain,* 38 Ind. 530, 538; *Tinder* v. *The Duck Pond Ditching Association,* 38 Ind. 555; *Stanford* v. *Stanford,* 42 Ind. 485, 489; *Grubbs* v. *The State,* 24 Ind. 295, and numerous other cases.

In the case last cited, it is said on page 296: "This principle has so often received the sanction of appellate courts, that it has become a maxim for their guidance, and it is especially important that it should not be forgotten here, where the judges hold for short terms, and where, unfortunately, the entire court may be changed at once."

We might not be willing to go to the extent of some of the authorities cited. We do mean to hold, however, that when a court of appeals of the last resort has, by its decisions, established a rule of property under which rights have been acquired as in this case, an adherence to such decisons by the same court becomes a duty, except for the most convincing and overwhelming reasons.

It is contended that the common law rule, that the repeal of a repealing act revives the act repealed, is no longer in force in this State, because the constitution has abrogated it.

We think the counsel are mistaken. The old act did not come into force again by re-enactment. It was simply revived. It was repealed or annulled during the pleasure of the law-making power.

Whilst the repealing act remained in force, the original statute had no more force than if it had never existed. It was annulled; but when the repealing act was repealed, the act repealed was left in force again. The rule is very ancient and uniform. 1 Bl. Com. 90; 1 Kent Com. 465; *Brinkley* v. *Swicegood,* 65 N. C. 626; *Wheeler* v. *Roberts,* 7 Cow. 536; Smith Com. on Const. 909; Dwar. Stat. 676; Sedgw. Stat. Law, 137; *The Bishops' Case,* 12 Co. Rep. 7; *Commonwealth*

**v.** *Mott,* 21 Pick. 492, 502; *Commonwealth* v. *Churchill,* 2 Met. 118; *Hastings* v. *Aiken,* 1 Gray, 163; *Doe* v. *Naylor,* 2 Blackf. 32.

*The Bishops' Case, supra,* lays down the rule thus:

"Yet true it is, that when an act of repeal is repealed, the first act, as hath been said, stands in force, and is *implicite* revived."

In *Hastings* v. *Aiken, supra,* it was held that the repeal of a repealing statute revived the original act, even when the original statute was repealed by implication only. It was said that there was no "sufficient reason for taking a distinction between the cases of a repeal of a later statute directly repealing a former one, and that of a repeal of a later statute repealing the former by implication. In both cases, the repealing statute being repealed, the former statute remains." A repeal by implication is in obedience to the legislative will as manifested by the act. It must appear to have been the intention of the legislature that the former act, or some part of it, should have been repealed; and that intention must appear in the later act.

When such intention is thus manifested, it is equally effectual as a repealing act as if done directly. *Tyson* v. *Postlethwaite,* 13 Ill. 727; *The Water Works Co.* v. *Burkhart,* 41 Ind. 364, 381.

The petition for a rehearing is overruled.