In the Matter of the Final Judicial Settlement of the Accounts of SAMUEL R. WELLS, as Executor, etc.

The will of C. gave one-eighth of her residuary estate to each of five persons named, "to have and to hold the same to them, their heirs and assigns, forever." Four of the beneficiaries died before the testatrix. She left neither parent nor descendant. The entire estate had come to the testatrix from her deceased husband; the five persons so named were his brothers and sisters, the balance of the residuary estate was given, one-eighth to the children of each of two brothers and a sister, deceased. In other clauses of the will provision was made that in case of the pre-decease of a donee his descendants should take. *Held*, that the gifts to the four deceased beneficiaries lapsed; that the addition of the word "heirs" did not show a contrary intent; and that, as the words of the will were clear and unambiguous, the extrinsic circumstances could not properly be resorted to to change or modify that meaning.

The rule of the common law that a legacy or devise, given with or without words of limitation, lapses in case of the death of the devisee or legatee before the testator, in the absence of express words to prevent a lapse, or of something in the context of the will indicating a contrary intent, is still in force in this state, save so far as modified by the Revised Statutes (2 R. S. 66, § 52), *i. e.*, where the devise or bequest is to a child or descendant of the testator.

The fact that words of inheritance are now unnecessary to convey a fee does not justify the construction that their use in a will is expressive of an intention that they shall be taken as words substituting in place of a pre-deceased legatee or devisee, his heirs; having a well settled and understood meaning, a different meaning may not be given to the words.

*In re Brown* (93 N. Y. 295) distinguished.

(Argued March 26, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made April 14, 1888, which affirmed a decree of the surrogate

of the county of Seneca on final settlement of the accounts of Samuel B. Wells, as sole executor of the will of Eunice B. Cooke, deceased.

The facts, so far as material, appear in the opinion.

*Edward M. Shepard* for appellant. The general rule of construing a will, or any other written paper, is, if it can be done without violating the intent, to give a meaning to all the words which are used. (3 Jar. [Ran. & T.'s ed.] 705; *Dover* v. *Gregory*, 10 Sim. 399; 1 Redf. on Wills [4th ed.] 430; *Lytle* v. *Beveridge*, 58 N. Y. 598; *Phillips* v. *Davis*, 92 id. 199, 204; *Chapman* v. *Brown*, 3 Burr. 1626.) In order to carry out the intent of the testator, the words of a will will be wrested from their usual and grammatical meaning, especially to save a general benefit intended for all the branches of a family. (*Teed* v. *Morton*, 60 N. Y. 502; *Sibthorm* v. *Moxon*, 3 Atk. 580; *In re Crawford*, 10 N. Y. S. R. 423; *Patchin* v. *Patchin*, 1 N. Y. Supplement, 913; *Rivernett* v. *Borquin*, 53 Mich. 10.) It is the duty of the court to ascertain from the frame-work of this will, and the circumstances of the testatrix, what the words " to have and to hold the same to them, their heirs and assigns forever," meant to Mrs. Cooke when she used them. (*In re Brown*, 295, 300; *Deu* v. *Manners*, 20 N. J. L. 142; *Hawn* v. *Banks*, 4 Edw. Ch. 664; *Davis* v. *Taul*, 6 Dana, 51; *In re Bond*, 31 Conn. 183; *Sibley* v. *Cook*, 3 Atk. 572.) If the appellants venture to presume that the expression " to have and to hold the same to them, their heirs and assigns " had been disjunctively put, " to have and to hold the same to them *or* their heirs or assigns," the decision below must have been different. (*Taggart* v. *Murray*, 53 N. Y. 233; *Gittings* v. *McDermott*, 2 M. & K. 69; *In re Stannard* v. *Burt*, L. J., 52 Ch. Div. 355; *Jones* v. *Tobin*, 6 Sim. 255; *Girdlestone* v. *Doe*, 2 id. 225.)

*Charles A. Hawley* for respondents. If a fund be given to several by name or in shares to be divided among them in equal parts, if any one of them dies before the testatrix

his share will lapse, for such legatees take as tenants in common, and not jointly. (*Everett* v. *Everett*, 29 N. Y. 39; *Downing* v. *Marshall*, 23 id. 367; *Westcott* v. *Cady*, 5 Johns. Ch. 358; *Weymans* v. *Ringgold*, 1 Bradf. 43; 3 Jarman on Wills [R. & T.] 1–8, 704; *Van Buren* v. *Dash*, 30 N. Y. 393; *In re Benson*, 96 id. 490; 1 Bouv. Law Dict. Est. of Joint Tenancy; 1 Schouler's Pers. Prop. 188; 2 Bl. Com. 183; 4 Kent, 359, 360 n.; 1 Wash. on Real Prop. 403; *Chamberlain* v. *Taylor*, 105 N. Y. 193.) As a general proposition, a lapsed legacy or devise falls into the residuum, but where the lapse occurs in the bequest or devise of the residuum itself, the lapsed bequest or devise goes to the next of kin or heirs-at-law as property undisposed of by the will. (*Heart* v. *Marks*, 4 Bradf. 161; *In re Benson*, 96 N. Y. 499; *Hillis* v. *Hillis*, 16 Hun, 46; *Kerr* v. *Dougherty*, 79 N. Y. 349; *White* v. *Howard*, 45 id.-144, 168.) At common law, unless the legatee or devisee survive the testator, the legacy or devise is extinguished. It "lapses," and neither the heir of the devisee nor the executor, administrator or next of kin of the legatee can claim it. (Willard on Exrs. 355; Redfield's Sur. Pr. 574; Willard's Eq. Jur. [Potter's ed.] 508; 1 Jarman on Wills, chap. 11; *Chrystie* v. *Phyfe*, 22 Barb. 220; *Bishop* v. *Bishop*, 4 Hill, 168; *Armstrong* v. *Moran*, 4 Bradf. 314; *Vernon* v. *Vernon*, 53 N. Y. 351; *Downing* v. *Marshall*, 23 id. 370; *Van Beuren* v. *Dash*, 30 id. 393; *Thurber* v. *Chambers*, 4 Hun, 725; *Gill* v. *Brower*, 38 N. Y. 549.) A lapse may be prevented by the testator by a suitable provision in his will, but his intention cannot be proved by evidence *de hors* the will. (Willard on Exrs. 354; *Arcularius* v. *Giesenhainer*, 3 Bradf. 64; *Sweet* v. *Giesenhainer*, 3 id. 114; 1 Jarman on Wills [R. & T.] 620, note 3; *Hone* v. *Schaick*, 3 N. Y. 539; *Mann* v. *Mann*, 14 Johns. 1; *Cromer* v. *Pinckney*, 3 Barb. Ch. 463; *In re Chappeaux*, 1 Tuck. 417; *Comfort* v. *Mather*, 3 Watts & Serg. 450.)

GRAY, J. The testatrix, after making a devise of certain real estate and certain bequests, by the tenth clause of her will,

disposed of all of the rest, residue and remainder of her estate, by giving one eighth part thereof to each of five persons named and one eighth part to the children of each of three other persons. After stating the legatee, or legatees of each eighth part, testatrix added these words: " *To have and to hold the same to them, their heirs and assigns forever.* " Four of the persons named as legatees died after the making of the will and before the testatrix, and this controversy arose as to whether the legacies to them lapsed, and whether as to such parts the testatrix has died intestate. The appellants, who are the heirs and representatives of the deceased legatees, argue that there was no lapse, and they found their argument upon the habendum clause, just quoted from the will, and upon what they deem to be evidences of a contrary intention of the testatrix. That evidence they glean entirely through a consideration of certain extrinsic circumstances. The estate of the testatrix had come entirely from her deceased husband, with whom she had lived some forty-five years. She died at an advanced age, leaving neither parent nor descendant, and the persons, whom she selected as her residuary legatees, were all the next of kin of her deceased husband; being his brothers and sisters, and the children of two brothers and of a sister, deceased.

Those facts are relied upon by the appellants, when considered together, as constituting some evidence of an intention of the testatrix to treat the bulk of her estate as a moral trust from her husband and to return it to his relatives. They then argue that, reading in that light the words " To have and to hold to them, their heirs and assigns forever, " a force and significance are imparted to them, which, generally, they would not possess. They say that they must be taken to have been meant by the testatrix to be operative as substitutional words, whereby the heirs of any person entitled will, upon his death, stand in his place.

We cannot, however, concede to these words the meaning contended for. The established principles of construction, in such cases, forbid it. In the absence of express words to pre-

vent a lapse, or of something in the context to indicate a contrary intention, we should give to the words in this habendum clause their usual and primary meaning, in accordance with a general rule in the construction of wills. At common law, a legacy or a devise lapsed and became void, where a legatee or devisee failed to survive the testator. The reason for the rule was that a will, in it nature, is ambulatory, and does not become operative until the death of the testator, and, until that event, the legacy has never vested. (1 Jarman, 338; 2 Wms. on Exrs. 1084.) In *Corbyn* v. *French* (4 Ves. 418, 435) the master of the rolls (Lord ALVANLEY) said: "A testator is never to be supposed to mean to give to any but those who shall survive him, unless the intention is perfectly clear." Such an intention cannot be said to be made clear by the addition of the word "heirs;" for that is a word of limitation, used to describe the nature and duration of the estate given, and, as Mr. Jarman observes in his valuable work (vol. 1, chap. 11), the doctrine of lapse "applies indiscriminately to gifts with and without words of limitation." This rule of the common law, with respect to the lapsing of a legacy or devise, was not abrogated, but it was modified, by the Revised Statutes of New York, to this extent, that where the devise or bequest is to a child or descendant of the testator, who dies in his lifetime, leaving a descendant, who survives the testator, the estate or interest given vests in the descendant of the legatee or devisee. (2 R. S. 66, § 52; *Downing* v. *Marshall*, 23 N. Y. 366.) It is apparent that the statute assumes that, but for its provisions, the devises or legacies, in the case of the pre-decease of the devisee or legatee, would have lapsed. Words of inheritance are now unnecessary to convey a fee, and are, indeed, mere surplusage, whether when used in wills or in deeds. That fact, however, is not a sufficient reason for us to import into their use the expression of an intention that they shall be taken as words substituting in place of the pre-deceased legatee or devisee his heirs. Where words like these have a well-settled and well-understood meaning, we should not invest them with a different one, unless we are forced to do so by a conviction, based

on some stronger support than that which is afforded by suggestion or speculation, however plausible.

Some evidence of extrinsic circumstances was admitted, and I have referred to the evidence above; but that is as inconclusive, as it seems to be improperly in the case. If there was room for the belief that there was some obscurity in the language; if the meaning of the words used was ambiguous or obscure, and, from the facts proved, an ambiguity was disclosed, evidence of circumstances, or of declarations, might find a proper place in the case, to remove the obscurity, or to give an effect to the ambiguous expressions. (*Hiscock* v. *Hiscock*, 5 M. & W. 363.) Lord ABINGER, in the case cited, said, that to ascertain the intention of the testator we should "read his will as he has written it and collect his intention from his words." Mr. Wigram, in his work on Wills, says that the legitimate purposes, to which evidence of material facts is applicable, are, "first, to determine whether the words of a will, with reference to the facts, admit of being construed in their primary sense; and, secondly, if the facts of the case exclude the primary meaning of the words, to determine whether the intention of the testator is certain in any other sense of which the words, with reference to the facts, are capable." (O'Hara's ed. [2d Am. ed.] 285.) The rule is undoubted that evidence is admissible, in aid of the exposition of a will, in all cases where, from some ambiguity or obscurity, a difficulty arises in applying the words of a will to the subject-matter of a devise. In the will before us I can perceive no obscurity in its language, nor doubtful meaning of the words used, and the admission of the extrinsic evidence does not introduce any difficulty, or ambiguity in the case, or prevent us from applying the words of the habendum clause in their ordinary and primary sense.

There is no real reason, arising from anything in the structure of this will, why we should suppose that the testatrix meant anything more than what she has said. We must take the whole structure of the will together, and not dismember

it, to discover what it accomplishes, and what it was meant to accomplish. We may assume, indeed, that the testatrix was aware of the effect of the pre-decease of a legatee; for we find, in the third clause of her will, in the case of a gift to her nephew, Nathan Crary, a provision that "in case he shall die before the receipt of said legacy, then the same shall go and be paid to his children," etc. Evidence of a similar understanding of the effect of the death of a legatee is suggested by the reading of the language of the third clause of the codicil.

How can it be fairly argued, then, that a reason exists that the words in question, which possess a certain meaning, should be read in another than their ordinary sense? Is it because the testatrix ought morally, and, therefore, must be held to have intended, to convey the bulk of her estate to the relatives of her deceased husband? That is a sentimental reason and it may explain as much as she did. But it cannot warrant our importing into her will another intention, which not only lacks support in expression, but may not, in fact, have been her intention; when we consider the fact that, in other cases of gifts, she has contemplated the effect of a possible pre-decease of the devisee and has provided for its occurrence, so as to perpetuate them in the descendants of the donee. The words of this clause are most inapt to signify substitution. To give to them such a sense, we should have to disregard and cut out such words as "to have and to hold" and "assigns," and interpolate others. They are meaningless, if the clause is to be regarded as substitutional. No gift can vest in the donee until the death of testatrix. What, then, is the sense of "to have and to hold" or of "assigns?" There are cases where words, accompanying a gift to a person of a legacy or devise, are deemed disjunctive, and, therefore, substitutional; or they may be explanatory, and, with the aid of the context, plainly indicate that the gift shall not become void by the death of the first taker named in the will before the testator. (*Gittings* v. *McDermott*, 2 M. & K. 65; *Hawn* v. *Banks*, 4 Edw. Ch. 664.) Whenever a testamentary intention is clear

and unequivocal, the courts go far to give it effect. They will convert " and " into " or," and construe words of limitation as words of purchase, or words of purchase as words of limitation. (*Taggart* v. *Murray*, 53 N. Y. 233.) Such was the case in *Matter of the Estate of Brown* (93 N. Y. 295), where the court sustained a construction, by which the issue of a deceased son might be admitted to participation in a remainder limited to him upon his mother's death. But there was justification for such a construction in the language used by the testator. It was "upon the death of any or either of my said daughters, I give  *  *  *  unto such child or children as my said daughter *shall have or leave living at her decease.  *  *  *  that is to say, the children* of my said daughters to have the part or share whereof the mother received the rent and income during her life." It was thought that the insertion of the words "have or leave," with respect to the daughter's children, and that the addition of the latter portion of the clause I have quoted, when taken in connection with the principal sentence, disclosed the testator's purpose to let in the issue of children dying before their mother, testator's child.

The decision in *Van Beuren* v. *Dash* (30 N. Y. 393), is a precise authority upon the question raised in the present case, and we see no substantial distinction between the two cases. There the insertion of the words " and their heirs," in a devise, was held to show the extent of the interest devised; and DENIO, J., answered the argument that the devise was one in favor of the heirs of the devisees by reference to the case of *Brett* v. *Rigden* (Plowden, 340), and to its being the accepted authority in England. He also said : " It does not follow that because such words may now be dispensed with that, where they are inserted, their legal effect is different from what it would have been before the statute." In *Thurber* v. *Chambers* (66 N. Y. 47) it was said of the presence of similar words in a will, that "although the use of them was unnecessary to vest a fee, it is quite common and the usual way in deeds and conveyances to insert them for greater certainty." In *Hand*

v. *Marcy* (28 N. J. Eq. 59) Chancellor RUNYON, in a well considered opinion, held that the addition of the words "their heirs and assigns" to a gift of the residue did not prevent a lapse, where a residuary legatee died in the lifetime of the testator, and that, as to so much of the estate disposed of by the residuary clause, the testator had died intestate. *Swan* v. *Adams* (3 Yeates, 34); *Sloan* v. *Hause* (2 Rawle, 28) are also decisions in point. Other authorities might he cited to show the universality of the rule as to lapse in similar cases, but it does not seem necessary. I think the appeal must fail. To sustain it we should have to make a new will; when we have no sure guide and no other reason than the ingenious suggestion of a possible motive, or rather of one, which, the counsel says, the testatrix ought to have entertained. Fairly considered, these words, which have suggested to the appellants their ground for contention, were but a common, or an intensified form of expression of an absolute gift. It was an expression consistent with the gift of an absolute ownership, but in no wise indicative of a direction to transfer the part given to a legatee to his heirs or personal representatives, in the event of his failing to survive the testatrix.

The judgment of the General Term should be affirmed, with costs to the respondents, to be paid out of the estate

All concur.

Judgment affirmed.