## SELBY v. BRENTON.

[No. 10,781.   Filed March 30, 1921.]

1. BASTARDS.—*Right of Illegitimate Child to Inherit Father's Estate.—Acknowledgment.—Statutes.—"Child".*—Section 3000 Burns 1914, Acts 1901 p. 288, providing that illegitimate children shall inherit from the father the same as legitimate children, where he acknowledges them as his own and there are no surviving legitimate children or descendants of legitimate children of intestate, being enacted with a clause repealing all laws in conflict therewith, modifies §3028 Burns 1914, §2490 R. S. 1881, a prior enactment, providing that if a husband or wife die intestate, leaving no child or father or mother, the whole of his or her property, shall go to the survivor, in that the word "child", as used in §3028 does not necessarily mean legitimate child, but may include a child which has been acknowledged as legitimate, and §3000 is not limited or affected by §3012 Burns 1914, §2841 R. S. 1881, also a previous enactment, providing that rules of descent and distribution shall be subject to statutory provision made in the act of 1853 in behalf of the surviving spouse, the purpose of the legislature in enacting §3000 being to give to an illegitimate child who has been legitimated according to its provisions the right to inherit from the father in the same manner as his legitimate child.   pp. 249, 255, 256, 261.

2. BASTARDS.—*Legitimating.—Marriage of Mother.—Acknowledgment.—Statute.*—Under §3001 Burns 1914, §2631 R. S. 1881, providing that if a man shall marry the mother of an illegitimate child and acknowledge it as his own, such child shall be deemed legitimate, the act of a man, whether he is or is not the father of the child, in marrying the mother, coupled with his acknowledgment of the child as his own, makes such child in the eyes of the law a legitimate child.   p. 254.

3. BASTARDS.—*Statute Giving Illegitimate Children Rights of Inheritance.—Validity.—Construction.*—The legislature has the right to determine the rules of inheritance and who shall be heirs, and it acted within that power in enacting §3000 Burns 1914, Acts 1901 p. 288, providing that the illegitimate child of an intestate acknowledged by him shall inherit the intestate's

estate as if legitimate, where there are no surviving legitimate children or descendants of legitimate children, and any illegitimate child who fulfills the conditions of the statute is entitled to inherit from the father. p. 256.

4. STATUTES. — *Construction.* — *Conflicting Statutes.* — Where there is a conflict between statutes they must be so construed as to give effect to the last act. p. 260.

From Pike Circuit Court; *Bomar Traylor*, Judge *Pro Tem.*

Action by Ray Selby against Nannie J. Brenton. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Harry W. Carpenter* and *Frank Ely*, for appellant.

*E. P. Richardson* and *A. H. Taylor*, for appellee.

McMAHAN, J.—Appellee is the widow of Wesley Brenton, who died intestate the owner of certain real estate in Pike county, and leaving no father, mother, children or descendants of legitimate children. Appellant claiming to be the owner of a one-half interest in the said land, filed his complaint against the appellee for partition, alleging that he was the illegitimate son of Wesley Brenton who is alleged to have acknowledged appellant as his child. Judgment having been rendered against appellant he appeals.

During the trial the court refused to permit appellant to prove that Wesley Brenton during his lifetime had acknowledged appellant as his child. The result of this appeal depends upon the correctness of this ruling.

Section 3000 Burns 1914, Acts 1901 p. 288, §1, provides, "That the illegitimate child or children of any man dying intestate and having acknowledged such child or children during his lifetime as his own, shall inherit his estate, both real and personal, and shall be deemed and taken to be the heir or heirs of such intestate in the same manner and to the same extent as if such child or children had been legiti-

mate.  *  *  *. And be it *provided,* That the provisions of this act shall not apply where the father of an illegitimate child, at his death, had surviving legitimate children or descendants of legitimate children." Section two of this act expressly repealed "all laws and parts of laws in conflict with the provisions of this act."

Appellee contends that being the widow of Wesley Brenton, she took all the estate under §3028 Burns 1914, §2490 R. S. 1881, the same being §26 of "An Act regulating descent and apportionment of estates." 1 R. S. 1852 p. 248.

In order that we may have a better understanding of the claims of appellant and appellee,· and of the statutes under which they claim, a review of the legislative enactments relative to the laws of descent may be profitable.

The legislature in 1843, passed "An Act concerning the acquisition, the enjoyment and transmission of property, real and personal, the domestic relations and other matters connected with private rights," which as enrolled is divided into chapters and articles, each having a heading or subtitle. The subtitle of article 5, chapter 28, is, "Of the title of real estate by descent," indicating that the sections in this article relate to real estate. §§108, 122 and 123 are as follows:    §108.    "The real estate of every person dying intestate shall descend in the manner, and subject to the rules of this Article." §122.    "Every illegitimate child shall be considered as an heir of his mother, and shall inherit her estate, in whole or in part, as the case may be, in like manner as if he had been born in lawful wedlock."    §123.    "If any man marry a woman who has, previous to the marriage, borne any illegitimate child, and after marriage shall acknowledge such child as his own, such child shall be deemed legitimate to all intents and purposes."

Chapter 30 is also a part of the same act and has

the following heading, "Of the title of property by will or testament, of the rights, powers, and duties of executors and administrators, of the distribution of the personal estate of intestates, and other matters relating thereto." The subhead of article 14 of this chapter as it appears in the printed act is, "Of making distribution of the surplus of the estate of the deceased, and of the payment of legacies." The enrolled act, however, does not contain any article 14 or any such title. Sections 367 and 368 appear in the printed act as part of article 14, while in the enrolled act they are a part of article 13, the heading of which is, "Of executors and administrators rendering their account and making final settlement." Section 367 is quite lengthy and provides for the method of distribution by executors and administrators of the surplus of the estate after the payment of debts and legacies. Section 368 provides that the following rules shall apply in the construction of the last preceding section. * * * "7. Every illegitimate child shall share in the distribution of the personal estate of his mother, as if he were born in lawful wedlock. 8. Where a man shall marry a woman who has borne an illegitimate child previous to such marriage, and he shall acknowledge himself to be the father of such child, such child shall be deemed legitimate."

Under §§122 and 368, subdivision 7, an illegitimate child was entitled to inherit from its mother the same as if it had been born in lawful wedlock. Sections 123 and 368, subdivision 8, provided that where a man married a woman who had, prior to such marriage, borne an illegitimate child, and acknowledged himself to be the father of such child, such child should be deemed to be legitimate. The wording of these two sections is quite similar, the main difference being that §123 required the acknowledgment on the part of the man must

be "after the marriage," while no such requirement is found in §368. Sections 122 and 123 were doubtless intended to apply to real estate, and §368 to personal property. These were the only sections of the statute giving an illegitimate child any right to inherit, and it will be observed that before such child could inherit from its father, the father must do two things, (1) marry the mother, and (2) acknowledge the child as his. A man might marry the mother of such child and not acknowledge it to be his, or he might acknowledge the child to be his and not marry the mother. Neither of these acts alone would give the child any right to share in the estate of the father. Under the common law an illegitimate child was *nullius filius*, and had no inheritable blood.

The legislature at the first session after the adoption of our present Constitution revised the laws of descent, and with knowledge of the then existing statutes relative to the rights of an illegitimate child to inherit from its father only when the father shall marry the mother and acknowledge such child as his own, and with knowledge of the common law upon the subject, it passed, "An Act regulating descent and apportionment of estates," (Chapter 27, 1 R. S. 1852). Sections 1 to 7 of this act related to legitimate children, descendants of such children, parents, brothers and sisters, kindred of half blood and collateral kindred. Sections 8 and 9, being §§2998 and 3001 Burns 1914, related to illegitimate children and are as follows: "§8. Illegitimate children shall inherit from their mother as if they were legitimate, and through the mother, if dead, any property or estate which she would, if living, have taken by gift, devise, or descent from any other person. §9. If a man marry the mother of an illegitimate child, and acknowledge it as his own, such child shall be deemed legitimate."

Of the remaining sections, §§15, 23, 25 and 26, (§§3012, 3017, 3027, and 3028 Burns 1914) are the only ones which have any bearing upon the question now under consideration, and relate to the rights of the widow, and are as follows: §15. "Every rule of descent or distribution prescribed by this act shall be subject to the provisions made in behalf of the surviving husband or wife of the decedent."

§23. "If a husband die intestate, leaving a widow and one child only, his real estate shall descend one-half to the widow and one-half to his child."

§25. "If a husband or wife die intestate, leaving no child, but leaving a father and mother, or either of them, then his or her property, real and personal, shall descend three-fourths to the widow or widower, and one-fourth to the father and mother jointly, or to the survivor of them: *Provided*, That if the whole amount of the property, real and personal, do not exceed one thousand dollars, the whole shall go to such widow or widower."

§26. "If a husband or wife die intestate, leaving no children and no father or mother, the whole of his or her property, real and personal, shall go to the survivor."

Up to this time no provision had been made whereby an illegitimate child could inherit from its father, unless the father had married the mother of such child. The first statute providing that such child might under any circumstance inherit from its father in the absence of his marrying its mother was enacted in 1853, Acts 1853 p. 78. Section 1 of said act is as follows: "The real and personal estate of any man dying intestate, without heirs resident in any of the United States at the time of his death or legitimate children capable of inheriting without the United States, shall descend to and be vested in his illegitimate child or children who are

residents of this State or any of the United States and such illegitimate child or children shall be deemed and taken to be the heir or heirs of such intestate in the same manner and entitled to take by descent or distribution to the same effect and extent as if such child or children had been legitimate: *Provided,* That the intestate shall have acknowledged such child or children as his own during his lifetime, *and provided further,* That the testimony of the mother of such child or children shall in no case be sufficient to establish the fact of such acknowledgment." §2630 Burns 1901, §2475 R. S. 1881.

The acts of 1852 and 1853 in so far as they related to illegitimate children remained in force without change until 1901, when the legislature passed "An Act concerning the inheritance of illegitimate children in certain cases, and repealing all conflicting laws." Section 1 of this act being §3000 Burns 1914, hereinbefore set out.

In determining the question at issue, we must keep in mind that appellant does not make any claim that he, by any act of Wesley Brenton, was legitimated. Wesley Brenton neither married appellant's mother nor did he adopt appellant. Appellant therefore does not come within the provisions of §3001, *supra.* If he can inherit it must be by virtue of §3000, *supra,* for at common law that right was denied. Prior, as above stated, to the passage of this act, an illegitimate child could not inherit from its father. When a man marries the mother of an illegitimate child and acknowledges it as his own, he thereby legitimates such child and it is no longer considered illegitimate. The act of the man, whether he is or is not the father of the child, in marrying the mother, coupled with the acknowledgment of the child as his own, makes such child in the eyes of the law a legitimate child. *Franklin*

*v. Lee* (1901), 30 Ind. App. 31, 62 N. E. 78; *Bailey* v. *Boyd* (1877), 59 Ind. 292. As said by the Supreme Court in *Binns* v. *Dazey* (1896), 147 Ind. 536, 44 N. E. 644: "The thing to be established under this statute is a legal relation, and not a blood relation, between the alleged father and child. The legal relation arises out of certain facts, namely, the marriage of a man to the mother of the bastard child and the acknowledgment by the man that it is his own. The fact that it is a bastard shows that it had no legal relation to any father. It is to establish such legal relation that the statute was enacted, and not to establish a blood relation. Indeed, the legal relation may be established between the man marrying the mother of a bastard child and such child by the acknowledgment of it as his own by the man, even where the blood relation of father and son does not exist."

Under the 1853 statute, illegitimate children residents of any of the United States could inherit from their father only, in the absence of any heirs residing

1. in the United States or legitimate children residing without the United States. And it has been held that if the father left brothers or sisters residing in the United States an illegitimate child could not inherit any part of the father's estate. *Borroughs* v. *Adams* (1881), 78 Ind. 160: "This being true," said the court in *Townsend* v. *Meneley* (1905), 37 Ind. App. 127, 74 N. E. 274, 76 N. E. 321, "the legislature undertook the duty of caring for the interest of illegitimate children, who at common law were fatherless, and had no right to inheritance. They were mere outcasts, and it was an act of humanity, quickened by good conscience and advancing civilization, for the legislature to remove, so far as possible, the blight and curse of their illegitimacy, and clothe them with the rights of inheritance

under such conditions as it might impose." With this condition of the law before it, the legislature

3. passed Acts 1901 p. 288, (§3000 Burns 1914), providing that the illegitimate child of any man dying intestate and having acknowledged such child as his own, should inherit his estate, and be deemed and taken to be the heir of such intestate in the same manner and to the same extent as if such child had been legitimate. This act repealed the act of 1853, and being remedial in character should be liberally construed so as to carry out the manifest intention of the legislature. *Townsend* v. *Meneley, supra*. The legislature has the right to determine the rules of inheritance and may provide as it sees fit who shall be heirs. It may provide that illegitimate children shall be recognized and considered heirs. And any illegitimate child who fulfills the conditions of the statute conferring the right to inherit is entitled under the statute to inherit. *Morin* v. *Holliday* (1906), 39 Ind. App. 201, 77 N. E. 861; *Alston* v. *Alston* (1901), 114 Iowa 29, 86 N. W. 55.

Appellee claims that her husband having died intestate, leaving no legitimate child or descendants of a legitimate child, and no father or mother, she in-

1. herited the whole of the real estate in controversy. In support of this contention she refers to said §3012, *supra*, §15 Acts of 1852, which provides that, "Every rule of descent or distribution prescribed in this act shall be subject to the provisions made in behalf of the surviving husband or wife of the decedent."

Her contention is that this section limits and modifies §3000, *supra*, and that although her husband did not leave surviving him any legitimate children or descendants of legitimate children, and although during his lifetime he may have acknowledged appellant to be his child, appellant can not be deemed and taken to be an

heir of her husband but, that she is the sole heir of her deceased husband and under §3028, *supra,* entitled to the whole of the estate.

Appellee says that the word "child" in §3028, *supra,* means "legitimate child" and that appellant being an illegitimate child can not share in the property, that whatever claim or right he has is subject to the provision made in the act of 1852 in behalf of the surviving wife. The weakness of appellee's contention lies in the fact that §3012, *supra,* is not a part of the Act of 1901 under which appellant claims. Section 2 of the later act repeals all prior law in conflict therewith and being later in point of time and not being a part of the act of 1853 is not limited or affected by §3012, *supra.*

In *Truelove* v. *Truelove* (1909), 172 Ind. 441, 86 N. E. 1018, 88 N. E. 516, 27 L. R. A. (N. S.) 220, 139 Am. St. 404, Caroline Coats died the owner of certain land, leaving surviving her no children or their descendants, no husband, no father or mother. Her mother was the mother of two legitimate children, Caroline and Timothy Truelove, and two illegitimate sons by an unknown father. Caroline left surviving her, her brother Timothy and the descendants of the two illegitimate sons of her mother. Appellants claimed to own all the land as heirs of Timothy, while appellees claimed an interest as heirs of Caroline through their fathers, her illegitimate half-brothers. Appellants insisted that the words "brothers" and "sisters" as used in §§2992, 2993 Burns 1908, §§2469, 2470 R. S. 1881, meant legitimate brothers and sisters, while appellee insisted that these words applied to illegitimate as well as legitimate brothers and sisters and entitled them as descendants of said illegitimate brothers to share with the heirs of the legitimate brother in the distribution of the estate. The court sustained the contention of appellants and held

that appellees were not entitled to any part of the estate, saying: "It is a rule of construction that, *prima facie*, the word 'child,' 'children,' or other terms of kindred, when used either in a statute or will, mean legitimate child or children or kindred. * * * When therefore the word 'child,' or 'children,' or 'brother,' or 'sister,' is used in the statute of descent, it must be held to mean legitimate child, children, brother or sister, unless the language of the statute clearly shows that it was used in a different sense. It is evident therefore that the legislature employed the words 'brother and sister or their descendants' in this sense in §§2992, 2993, *supra*. It is manifest that, had the mother, the legitimate brother and the two illegitimate brothers survived Caroline E. Coats, under §2992, *supra*, the mother and the legitimate brother would have taken all of her estate, to the exclusion of the two illegitimate brothers."

Section 266 Burns 1914, §265 R. S. 1881, provides that a father, or under certain circumstances the mother, may maintain an action for the death of the child. In *McDonald* v. *Pittsburgh, etc., R. Co.* (1896), 144 Ind. 459, 43 N. E. 447, 32 L. R. A. 309, 55 Am. St. 185, it was held that the father could not maintain an action for the death of an illegitimate child where he had not married the mother of such child and acknowledged it as his own, the court saying: "It is a rule of construction that *prima facie* the word child or children, when used either in a statute or a will, means legitimate child or children, that is, that bastards are not within the meaning of the term child or children."

We do not question the correctness of any of these decisions. The rule, that the word "child" *prima facie* means a legitimate child, does not apply when the statute clearly shows that it was used in a different sense.

We hold that the word "child" as used in §3028, *supra*, does not necessarily mean a legitimate child. Since the

enactment of §3000, *supra,* it may also mean an illegitimate child who by proof brings itself within this section.

Appellee by her contention would also have us add the words "or wife" at the end of §3000, *supra,* making the last proviso read: *"And be it Provided,* That the provisions of this act shall not apply where the father of an illegitimate child, at his death, had surviving legitimate children or descendants of legitimate children, or a wife." This we cannot do. To do so would be taking too much liberty with the language which the legislature had used to express its meaning. Had the legislature intended that an illegitimate child should not inherit where its acknowledged father left a widow, it would have been easy for it to have said so. If there is any irreconcilable conflict between §§3012, 3028, and 3000, *supra,* the latter will control. When the legislature in §2 of Act 1901, *supra,* said, "all laws and parts of laws in conflict with the provisions of this act are hereby repealed," it had in mind that there were other laws limiting the rights of illegitimate children to inherit, and it was the evident intention of the legislature that the act then before it should govern and control such rights. It is clear to us that it was the intention of the legislature when a man died intestate and had during his lifetime acknowledged an illegitimate child as his, that such child when so acknowledged should inherit, and be deemed to be an heir of such intestate in the same manner and to the same extent as if such child were legitimate, provided, however, that such illegitimate should not inherit if the intestate left surviving him legitimate children or descendants of legitimate children.

Appellee cites *Jackson* v. *Hocke* (1908), 171 Ind. 371, 84 N. E. 830. Appellee Hocke was an illegitimate child of Clara Hoover, who after the birth of appellee mar-

ried appellant's intestate William Jackson. Clara died and soon thereafter her husband, not having remarried, died intestate leaving no widow, no father or mother, no child or children or their descendants, but leaving brothers and sisters surviving. Appellee claimed that she inherited the whole of the estate under §2998, *supra*, to the exclusion of the brothers and sisters. The court after calling attention to the fact that children take nothing from their step-parents, denied appellee's claim, holding that the construction of §2998, *supra*, contended for by appellee would give an illegitimate child a greater right of inheritance through its mother than are given to legitimate children of the mother born to her by a former marriage. The court after saying: "It is a rule of construction that, *prima facie,* the words 'child,' 'children,' or other terms of kindred, when used either in a statute or will, mean legitimate child, children or kindred only, and not illegitimate child, children or kindred," said, "There seems to be a conflict between §§2990-2994, and 3028, *supra,* and other sections of said act which make provisions for the surviving husband or wife of the decedent, but this seeming conflict is removed by §3012 Burns 1908, §2481 R. S. 1881, which provided that 'every rule of descent or distribution prescribed by this act shall be subject to the provisions made in behalf of the surviving husband or wife of the decedent.'"

Appellee insists that in accordance with the last statement, we must hold that any conflict between §§3000 and 3028, *supra,* must be harmonized so as to leave the latter section unaffected by the former. As we have heretofore stated this cannot be done. The conflict, if any, must be construed so as to give effect to the last act of the legislature, and so as to give effect to the legislative intent in passing the later

statute. *State* v. *Kiley* (1905), 36 Ind. App. 513, 76 N. E. 1845; 25 R. C. L. 1064, §287.

As said by this court in *Morin* v. *Holliday, supra,* in construing §3000, · *supra,* under which appellant is claiming title: "The statute under consideration must be regarded as an integral part of the statutory scheme regulating the descent of property. We must construe this statute in the light of the new rights created, and upon which such rights are to operate. The statute provides for a new line of succession, and creates a new and distinct class, that may take by inheritance. As said in *Paul* v. *Davis, supra* (100 Ind. 423) : 'When we ascertain the status we have secured the key to the main position, for from the status of the persons interested flows the legal right, interest, and title.' * * * By the present statute, which repeals all laws in conflict with it, illegitimates are made heirs of their putative father in preference to all other heirs, except legitimate children or their descendants. (Acts 1901 p. 288, §2630a Burns 1901.) This being true, it is evident that it was the intention of the legislature to give to such unfortunate children the same rights as to inheritance from the father as though they had been born in lawful wedlock, provided there were no surviving children or their descendants. Applying, therefore, the rule for the construction of statutes, any construction that deprives them of that right would be a palpable violation of both the spirit and letter of the statute."

In *State* v. *Roby* (1895), 142 Ind. 168, 41 N. E. 145, 33 L. R. A. 213, 51 Am. St. 174, the Supreme Court on page 182 said: "In construing an act the court ought to examine the history of the times so as to relieve from the mischief and accomplish the purpose of the act. Maxwell Interpretation Statutes, pp. 133, 318, 333, 345; Potter & Dwarris, pp. 240, 247, 262; Suth. Stat. Con., sections 234, 235, 241, 246, 349, 354, 356. In *Stout* v.

*Board, etc.,* 107 Ind. 343, at page 347, it was said: 'The legislative intention, as collected from the examination of the whole, as well as the separate parts, of a statute, will prevail over the literal import of particular terms, and will control the strict letter of the statute where an adherence to the strict letter would lead to injustice, to absurdity, or contradictory provisions.'" In *Krug* v. *Davis* (1882), 87 Ind. 590, on page 596, the court said: "In one of our earlier cases it was said: 'In statutory exposition, the reason, the spirit, the intention of the law is above the mere cavil of the words. The chief thing to be explored is the intention. This the judiciary is to seek in the history of legislation, in the objects contemplated, the evils to be corrected, and the remedies provided.' *Spencer* v. *State,* 5 Ind. 41. This principle has been many times approved and acted upon by this court."

Sections 3000 and 3001, *supra,* are parts of separate and entirely independent acts, the one providing the method of legitimating the illegitimate child, in which case it may inherit from the father as his natural and legitimate child, and the other making provisions for the illegitimate child's inheritance, where the first necessary steps of legitimation, viz., the marriage of the parents has not been taken. Section 3001, *supra,* is a part of the law of descent, and the illegitimate child legitimated according to its provisions inherits from the father the same as his legitimate child. *Haddon* v. *Crawford* (1912), 49 Ind. App. 551, 97 N. E. 811.

It follows from what we have said that the court erred in excluding the evidence offered by appellant to prove that Wesley Brenton had acknowledged him as his own child.

Judgment reversed, with directions to grant a new trial and for further proceedings not inconsistent with this opinion.