## EDWARDS, ADMINISTRATOR, *v*. BEARD ET AL.

[No. 11,124.   Filed February 2, 1922.]

1.  WILLS.—*Death of Devisee Before that of Testator.—"Lapse."*
—*Statutes.*—"Lapse" is a term generally used to designate the failure of a devise or legacy by reason of the death of the devisee or legatee before that of the testator, or afterwards before the interest vests, but, under §3127 Burns 1914, §2571 R. S. 1881, where the devisee is a descendant of the testator and dies during testator's lifetime, leaving a descendant sur-

viving the testator, the devise does not lapse, but the property devised vests in such surviving descendant. p. 481.

2. BASTARDS.—*Right of Inheritance.—Statute.—Construction.*— Section 3000 Burns 1914, Acts 1901 p. 288, concerning the right of illegitimate children to inherit from the father, was intended to ameliorate the unfortunate condition of illegitimate children under the common law, and, being remedial in character, should be liberally construed to effect the purpose of its enactment. p. 482.

3. BASTARDS.—*Right of Inheritance from Father.—"Intestate." —Statutes.*—Where a devise lapsed because of the death of the devisee prior to that of the testator, the testator died "intestate" as to such property within the meaning of §3000 Burns 1914, Acts 1901 p. 288, permitting an illegitimate child to inherit from its father where he dies intestate. p. 482.

4. WILLS.—*Lapsed Will.—Disposition of Property Covered.*— Property covered by a lapsed or void will, in the absence of a residuary legatee, goes to the heirs of the testator. p. 485.

5. WILLS.—*Agreement to Devise Property in Payment of Debt. —Parol Evidence.—Admissibility.*—Where a devisee dies prior to the death of the testator, parol evidence is inadmissible to prove an agreement to make the devise in payment of a debt, or for value received, in order to prevent the lapsing of the legacy. p. 487.

From Hendricks Circuit Court; *James P. Hughes,* Special Judge.

Proceeding in the matter of the estate of Elisha D. Beard, deceased. From a judgment distributing the estate, Charles E. Edwards, administrator of the estate of Mabel Smith, deceased, appeals. *Affirmed.*

*Ira M. Sharp,* for appellant.

*G. R. Estabrook, George W. Brill* and *Edgar M. Blessing,* for appellees.

MCMAHAN, J.—Dr. Elisha D. Beard died May 1, 1919, his only possible heirs being appellee Lizzie Vaughn, a half-sister, and appellee Louis H. Beard, an illegitimate son whom he had acknowledged as his child. In September, 1918, Dr. Beard executed a will in which he named an executor and directed that all his just debts

be paid. In item 2 he willed and bequeathed all his property, real and personal, to "Mabel Smith, known as my adopted daughter, Mary Catherine Beard." While Dr. Beard and Mabel Smith were attempting to cross a railroad in an automobile they were struck by a train and killed. Miss Smith died first. The executor named in said will, having been appointed by the court, took upon himself the settlement of the estate and filed a final report showing a certain amount of money and government bonds in his hands, and not knowing to whom the assets belonged, he turned them over to the court for distribution as the court should direct. Appellant as administrator of the estate of Mabel Smith, Louis H. Beard, and Lizzie Vaughn, filed their separate petitions asking that the assets be turned over to them. The executor's report was approved and the court after a trial found that appellee Louis H. Beard was entitled to the assets and entered a decree accordingly. The separate motions of appellant and of Lizzie Vaughn for a new trial were overruled. Appellant appeals and contends that the court erred in overruling his motion for a new trial. Lizzie Vaughn assigned cross errors in which she contends that the court erred in overruling her motion for a new trial.

Appellee Louis H. Beard contends that since Mabel Smith died before the decedent the bequest to her lapsed, that decedent thereupon died intestate, and having acknowledged said appellee to be his child he was entitled to the whole of the estate under §3000 Burns 1914, Acts 1901 p. 288, which provides: "That the illegitimate child or children of any man dying intestate and having acknowledged such child or children during his life time as his own, shall inherit his estate, both real and personal, and shall be deemed and taken to be the heir or heirs of such intestate in the same manner and to the same extent as if such child or children had been legiti-

mate. * * * The provisions of this act shall not apply where the father of the illegitimate child, at his death, had surviving legitimate children or descendants of legitimate children."

Mabel Smith at the time of her death was about nineteen years old. She had lived in the home of Dr. Beard since she was about three years old, but was not related to him. She left as her only heir her mother. Dr. Beard made no devise or bequest of property other than to Mabel Smith. At the time of his death Dr. Beard had no surviving legitimate children or descendants of legitimate children. His wife had predeceased him, his only relative and next of kin other than appellee Louis H. Beard being appellee Lizzie Vaughn. Appellant and appellee Lizzie Vaughn each contend that Dr. Beard did not die intestate and that the illegitimate son therefore took nothing under said statute. If the legacy to Mabel Smith lapsed and if Dr. Beard died intestate as that term is used in §3000, *supra*, appellee Louis H. Beard inherited his estate and must be deemed and taken to be his heir in the same manner and to the same extent as if he had been legitimate.

"Lapse" is a term generally used to designate the failure of a devise or legacy by reason of the death of the devisee or legatee before the testator, or afterwards before the interest vests, and as wills have

1. no effect until the death of the testator, the gift fails of necessity if the donee has then ceased to exist. Rood, Wills §§667, 668. *In re Wells* (1889), 113 N. Y. 396, 21 N. E. 137, 10 Am. St. 457. At common law a legacy or devise lapsed and became void where the legatee or devisee failed to survive the testator. The reason for the rule is that a will in its nature is ambulatory and does not become operative until the death of the testator, and until that event the legacy has never

vested. 1 Jarman, Wills 338. The reason of the rule for a lapse in the case of an ordinary legacy is that there is no one in whom a legacy can vest at the time of the testator's death. This rule, however, has no application where it was not intended that the legacy should vest, as where the legacy is given upon condition that it shall be accepted in absolute payment of a debt. In such a case the legacy is the price or value put by the testator upon the opposing claim which is submitted for acceptance at his decease. The acceptance of the legacy extinguishes the debt and forms a good consideration for the legacy. *Cole* v. *Niles* (1874), 3 Hun (N. Y.) 326. But there is no evidence that the legacy to Mabel Smith was in payment of a debt, or that it was given other than as a bounty. It is therefore clear that, she having died before the testator, the legacy to her lapsed. If she had been a descendant of the testator and had left surviving her descendants the legacy would not have lapsed. §3127 Burns 1914, §2571 R. S. 1881.

Said §3000, *supra,* was intended to ameliorate the unfortunate condition of illegitimate children as it existed at common law. It is remedial in nature and should be liberally construed to effect the purpose of its enactment. *Morin* v. *Holliday* (1906), 39 Ind. App. 201, 77 N. E. 861; *Wilson* v. *Bass* (1918), 70 Ind. App. 116, 118 N. E. 379; *Selby* v. *Brenton* (1921), 75 Ind. App. 248, 130 N. E. 448. And as said by this court in *Morin* v. *Holliday, supra*: "The statute under consideration must be regarded as an integral part of the statutory scheme regulating the descent of property."

The first question for our determination is what meaning shall be given to the word "intestate" as used in said section. As before stated, said section is a part of the general law of this state regulating descent. Section 2990 Burns 1914, §2467 R. S.

1881, being §1 of the Act of 1852 regulating descents and apportionment of estates, provides that real and personal property of any person dying "intestate" shall descend to his or her children, etc. Section 2991 Burns 1914, §2468 R. S. 1881, provides that: "If any children of such intestate shall have died intestate, leaving a child or children, such child or children shall inherit the share which would have descended to the father or mother; * * * and all other relatives of the intestate * * * shall inherit by the same rule: *Provided,* That if the intestate shall have left, at his death, grandchildren only, alive, they shall inherit equally. Section 3028 Burns 1914, §2490 R. S. 1881, is as follows: "If a husband or wife die intestate, leaving no child and no father or mother, the whole of his or her property, real and personal, shall go to the survivor." The word "intestate" as used in said §3000, *supra,* in so far as we are able to discover is used in the same sense as it is used in §3028, *supra,* and in each of the other sections of the statute regulating descents.

The Supreme Court in *Rocker* v. *Metzger* (1908), 171 Ind. 364, 86 N. E. 403, held that the word "intestate" as used in §3028, *supra,* referred to property and not to decedent. This same construction was held in *Lindsay* v. *Lindsay* (1874), 47 Ind. 283; *Waugh* v. *Riley* (1879), 68 Ind. 482; *Wilson* v. *Moore* (1882), 86 Ind. 244; *Hauk* v. *McComas* (1884), 98 Ind. 460; *Thomas* v. *Thomas* (1886), 108 Ind. 576, 9 N. E. 457; *Collins* v. *Collins* (1891), 126 Ind. 559, 25 N. E. 704, 28 N. E. 190. In *Cool* v. *Cool* (1876), 54 Ind. 225, where the decedent left a will and the widow elected to take under the law and not under the will, the court, after quoting said §3028, *supra,* said: "And if he or she die intestate, as to a part of the property, this statute applies, and governs the disposition to be made of such part." In *Collins* v. *Collins, supra,* a testator devised all of his real

estate to his wife for life. He devised a certain portion of said real estate subject to the wife's life estate to a son with remainder to his daughter. The daughter and her only child died during the testator's life time, and it was held that the devise to the daughter lapsed and that, as to the real estate devised to her, the testator died intestate. In *Thomas* v. *Thomas, supra,* where the testator devised lands to his widow for life, but failed to dispose of the fee, it was held that in so far as the real estate was not disposed of by the will he died intestate and that the law cast it upon his heirs at his death, the court saying: "The mere fact that a will was made did not interrupt the statute regulating descents, unless by force of the testament a disposition was made of the whole estate different from that provided by law, in case of intestacy."

So in *Lindsay* v. *Lindsay, supra,* the court, after referring to §26 of the statute of descents, being §3028, *supra,* said: "We think that section 26, *supra,* should be construed as if it provided that if a husband or wife die, leaving any estate undevised, and leaving no child, and no father or mother, the whole of such estate shall descend to the survivor; that the word 'intestate' refers to property, and not to the decedent."

The course of the descent of an estate to the heirs at law can only be interrupted by a devise to some other person. A man may profess to make a will but if he suffers all his estate to descend according to the law of descent he in fact makes no will in so far as the disposition of his estate is concerned. *McIntire* v. *Cross* (1852), 3 Ind. 444; *Clendenning* v. *Lanius* (1852), 3 Ind. 441, 56 Am. Dec. 518 note.

A will has been defined to be the disposition of one's property to take effect after death; and as an instrument for the sole purpose of disposing of one's property. *Coffman* v. *Coffman* (1888), 85 Va. 459, 8 S. E. 672, 6

L. R. A. 848, 17 Am. St. 69, citing Bouvier's Law Dictionary; *Carr* v. *Effinger* (1883), 78 Va. 197. Rood, Wills §46, defines a will as follows: "A will or testament is a lawful voluntary disposition of property, to a competent donee, by anyone competent, and to take effect upon the death of the testator, unless sooner revoked." Under this definition it will be observed there must be a disposition of property. And it has been held that a writing simply declaring whom the deceased wished to have appointed as guardian of his children at his death 'is not a will nor entitled to probate. *Williams* v. *Noland* (1895), 10 Tex. Civ. App. 629, 32 S. W. 328. And a writing which simply revokes all former wills is not a will nor entitled to probate (*Rudy* v. *Ulrich* [1871], 69 Penn. St. 177, 8 Am. Rep. 238), although there are good reasons why such writings should be probated and they have several times been held to be testamentary instruments entitled to probate. *Bayley* v. *Bailey* (1849), 59 Mass. 245. It has always been held that a writing appointing an executor is a will entitled to probate though it makes no attempt to dispose of any property. *Stewart* v. *Stewart* (1901), 177 Mass. 493, 59 N. E. 116.

The law provides how a man's estate at his death shall go unless he by his will primarily directs that it shall be disposed of differently. It is well settled that 4. a testator can disinherit his heirs and next of kin only by leaving his property to others. The estate must be actually given to somebody else. The heirs take by operation of the law without any act or will of the intestate. He can deprive them of it only by asserting the option the law gives him of disposing of it while he lives or giving it to others by his will. Rood, Wills §497; *Bradford* v. *Leake* (1910), 124 Tenn. 312, 137 S. W. 96, Ann. Cas. 1912D 1140. "Unfavored children," said the court in the case last cited, "will take their reg-

ular share of all the property not given to any one else."
And again on p. 233, the court says: "A testator may
make or revoke his will, but he can neither make nor
unmake a law of the State." Property covered by a
lapsed or void will, in the absence of a residuary devisee,
goes to the heirs of the testator. *Bradford* v. *Leake,*
*supra.* In the case just cited John M. Lea devised cer-
tain real estate to his mother subject to certain condi-
tions and provided that in case she died intestate it was
devised to Overton Lea, Jr. The mother died leaving a
will and devised the property to Overton Lea, Sr., who
filed a formal renunciation refusing to accept the de-
vise. While Mrs. Lea went through all the forms of
making a will as to the property in controversy, it did
not result in a disposition of the property, and although
she died nominally testate the court held that in reality
she died intestate. In discussing this question the court
said:

"Though the ordinary meaning of the word 'intestacy'
is that it is the state of one who has died without mak-
ing a will, we think it is clear that John M. Lea, Jr., in-
tended to be understood as saying that, if his mother
should die without effectually disposing of the property
which he was devising to her, it should, upon her death,
pass to Overton Lea, Jr. * * * She having died
without such effectual disposition, we are of the opinion
that it did pass to the heirs of Overton Lea, Jr.,
* * *"

In harmony with the above authorities, we hold that
the word "intestate" in §3000, *supra,* refers to property
and not to the decedent, that under the evidence Dr.
Beard died intestate and that appellee Louis H. Beard
is entitled to the assets in the hands of the clerk.

Appellant next contends that the court erred in re-
fusing to permit him to prove by Dorothy Price that a

few months before Dr. Beard's death she had a 5. conversation with Dr. Beard in which he said that Mabel Smith had agreed to live with him and assist in the housework and that she would receive all of his property at his death, that he had agreed to will her all his property and that he had made a will leaving it all to her.

The purpose of this offered testimony was to prove that the devise to Mabel Smith was made for the purpose of paying a debt owing to her, upon the theory that where there has been a devise to a person in payment of a debt and the devisee dies before the testator that the legacy does not lapse.

The question presented is not whether a legacy declared in the will to be given in payment of a debt, or for value received, will be presumed to have been given in the discharge of an obligation so as to preclude a lapse by the legatee's death before that of the testator. That principle is well settled. *Ward* v. *Bush* (1900), 59 N. J. Eq. 144, 45 Atl. 534. The question for our determination is whether or not such an agreement may be proven by parol evidence in order to prevent the lapsing of a legacy. As said in *Corbyn* v. *French* (1799), 4 Ves. Jun. 418: "A testator is never to be supposed to mean to give to any but those, who shall survive him, unless the intention is perfectly clear." And in 2 Redfield, Law of Wills (3d ed.) 164, it is said: "It seems, both in principle and according to decided cases, that no parol evidence can be received to show that the testator did not intend the legacy to lapse."

The court did not err in excluding the offered evidence.

Judgment affirmed.